COMMONWEALTH *vs.* ROBERT A. BERGSTROM.

Franklin. December 8, 1987. — June 13, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Constitutional Law,* Confrontation of witnesses, Jury. *Rape. Witness,* Child. *Evidence,* Videotape. *Practice, Criminal,* Public trial, Fair trial. *Judge.*

General Laws c. 278, § 16D, permitting a child witness at the trial of a defendant accused of any of certain enumerated criminal offenses to testify by electronic means, outside the presence of the defendant, where the child is alleged to be a victim of or a witness to the alleged criminal act, is not consonant with art. 12 of the Massachusetts Declaration of Rights, which guarantees a criminal defendant the right to "meet the witnesses against him face to face." [541-548]

At a criminal trial, a transmission to the jury of certain child witnesses' testimony by closed circuit television was not of sufficient quality to allow the jury to fulfil their responsibility in evaluating the credibility of those witnesses. [548-550]

In order for the videotape-recorded testimony of a child witness taken in the presence of the defendant but outside the physical presence of the jury to be used at a criminal trial in lieu of live testimony when that witness is available, the Commonwealth must demonstrate a compelling need for such a procedure. [550-551]

This court, questioning whether a fair trial could be realized under procedures provided by G. L. c. 278, § 16D, for videotape recording of certain testimony outside the jury's presence, emphasized the importance, as matter of fundamental fairness, of the judge's physical presence in the courtroom while testimony is given at a criminal trial, as well as the importance of his presence at the time and place at which any witness's testimony is recorded on videotape. [551-552]

INDICTMENTS found and returned in the Superior Court Department on September 6, 1985.

The cases were tried before *Elizabeth A. Porada,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*J. Richard Ratcliffe* (*Mitchell Garabedian* with him) for the defendant.

*Charles K. Stephenson,* Assistant District Attorney (*Judy G. Zeprun,* Assistant Attorney General, with him) for the Commonwealth.

*James M. Shannon,* Attorney General, & *Judy G. Zeprun,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

LIACOS, J.  This case presents a constitutional issue of first impression: whether, during the course of a criminal trial, child witnesses may, through electronic means, testify outside the physical presence of the defendant and of the jury consonant with the confrontation guarantees of the Sixth Amendment to the United States Constitution and of art. 12 of the Massachusetts Declaration of Rights. We resolve this issue solely under art. 12.

The facts which give rise to this case are these. The defendant was indicted for rape and for indecent assault and battery on each of his minor daughters. Prior to trial, the Commonwealth moved, pursuant to G. L. c. 278, § 16D (1986 ed.), to take the children's testimony by use of simultaneous closed circuit television transmission. After an evidentiary hearing, the judge allowed the motion. The defendant was convicted on all counts, although execution of his sentences has been stayed pending appeal.

General Laws c. 278, § 16D, quoted in the margin,[1] was first enacted in 1985. St. 1985, c. 682. The statute provides

---

[1] "(*a*) For the purposes of this section, the following words shall have the following meanings: —

" 'Child witness', a person who is under the age of fifteen years and who is alleged to have been a victim of, or a witness to an alleged violation of section thirteen B, thirteen F, thirteen H, twenty-two, twenty-two A, twenty-three, twenty-four or twenty-four B of chapter two hundred and sixty-five, or section two, three, four, four A, four B, five, six, seven, eight, twelve, thirteen, sixteen, seventeen, twenty-four, twenty-eight, twenty-nine, twenty-nine A, twenty-nine B, thirty-three, thirty-four or thirty-five A of chapter two hundred and seventy-two.

" 'Simultaneous electronic means', [a]ny device capable of projecting a live visual and aural transmission such as closed-circuit television.

"(*b*) (1) At any time after the issuance of a complaint or indictment alleg-

that the judge, after hearing, may order "the use of a suitable alternative procedure" for presenting at trial the testimony of a

ing an offense punished by any of the statutes listed herein, the court on its own motion or on motion of the proponent of a child witness, and after a hearing, may order the use of a suitable alternative procedure for taking the testimony of the child witness, in proceedings pursuant to said complaint or indictment, provided that the court *finds by a preponderance of the evidence* at the time of the order that the child witness is likely to suffer psychological or emotional trauma as a result of testifying in open court, *as a result of testifying in the presence of the defendant, or as a result of both testifying in open court and testifying in the presence of the defendant.* If the court orders the use of a suitable alternative for taking the testimony of a child witness pursuant to this section, the court shall make and enter specific findings upon the record describing with particularity the reasons for such order.

"(2) An order issued under paragraph (1) shall provide that the testimony of the child witness be recorded on videotape or film to be shown in court at a later time or that the testimony be transmitted to the courtroom by simultaneous electronic means.

"(3) Testimony taken by an alternative procedure pursuant to an order issued under paragraph (1) shall be taken in the presence of the judge, the prosecutor, defense counsel and such other persons as the court may allow. *The defendant shall also have the right to be present unless the court's order under paragraph (1) is based wholly or in part upon a finding that the child witness is likely to suffer trauma as a result of testifying in the presence of the defendant. If the order is based on such a finding, the testimony of the child witness shall not be taken in the presence of the defendant except as provided in paragraph (4).*

"(4) Testimony taken by an alternative procedure pursuant to an order issued under paragraph (1) shall be taken in a suitable setting outside the courtroom, except that an order based only on a finding that the child witness is likely to suffer trauma *as a result of testifying in the presence of the defendant* may provide that the testimony be taken in a suitable setting inside the courtroom in a manner *so that the child witness is not able to see or hear the defendant.*

"(5) When testimony is taken by an alternative procedure pursuant to an order issued under paragraph (1), counsel shall be given the opportunity to examine or cross-examine the child witness to the same extent as would be permitted at trial, and the defendant shall be able to see and hear the child witness and to have constant private communication with defense counsel.

"(6) The film, videotape or transmission of testimony taken by an alternative procedure pursuant to an order issued under paragraph (1) shall be admissible as substantive evidence to the same extent as and in lieu of live testimony by the child witness in any proceeding for which the order is issued or in any related criminal proceeding against the same defendant when consistent with the interests of justice, provided that such an order is entered or re-entered based on current findings at the time when or within a reasonable time before the film, videotape or transmission is offered into

child witness under fifteen years of age, who is alleged to be a victim of, or witness to, various criminal sexual acts. The statute permits testimony by recording on film or videotape, by simultaneous visual and aural transmission through any capable device (including closed circuit television), or in a courtroom setting such that the child witness is unable to see or hear the defendant. If, after a pretrial hearing, the judge finds by "a preponderance of the evidence at the time of the order that the child witness is likely to suffer psychological or emotional trauma as a result of testifying in open court, as a result of testifying in the presence of the defendant," or as a result of doing both, the judge shall enter specific findings allowing use of the statutory alternatives. G. L. c. 278, § 16D (*b*) (1). The testimony must be taken in the presence of the judge, the prosecutor, the defense counsel, and "such other persons as the court may allow." *Id.* at § 16D (*b*) (3). The defendant has a right to be present, absent a showing that the witness is likely to suffer trauma as a result of his presence. If

---

evidence. Subsequent testimony of a child witness in any such proceeding shall also be taken by a suitable alternative procedure pursuant to this section.

"(7) Whenever pursuant to an order issued under paragraph (1), testimony is recorded on videotape or film or is transmitted to the courtroom by simultaneous electronic means, the court shall ensure that:

"(*a*) The recording or transmitting equipment is capable of making an accurate recording or transmission and is operated by a competent operator;

"(*b*) The recording or transmission is in color and the witness is visible at all times;

"(*c*) Every voice on the recording or transmission is audible and identified;

"(*d*) The courtroom is equipped with monitors which permit the jury and others present in the courtroom to see and hear the recording or transmission;

"(*e*) In the case of recorded testimony, the recording is accurate and has not been altered;

"(*f*) In the case of recorded testimony, each party is afforded the opportunity to view the recording before it is shown in the courtroom.

"(8) Nothing in this section shall be deemed to prohibit the court from using other appropriate means, consistent with this section and other laws and with the defendant's rights, to protect a child witness from trauma during a court proceeding." (Emphasis added.)

We emphasize that our opinion deals only with those portions of § 16D, e.g., (*b*) (1), (*b*) (3), and (*b*) (4), which we have italicized.

the defendant's presence is barred, he must be able to see and hear the witness and to have constant private communication with his attorney. *Id.* at § 16D (*b*) (3)-(5).

At the evidentiary hearing on its motion, the Commonwealth proffered the testimony of the social worker who acted as therapist to the children, and that of a psychologist, regarding the capacity of the children to testify in court. Based on this testimony, the judge ruled that the Commonwealth proved, by a preponderance of the evidence, that the children would "suffer psychological trauma" if required to testify "in front of their father in a face-to-face confrontation *and* in front of a jury in a formal court setting" (emphasis in original).[2] The testimony of the psychologist, Dr. Anne McComb, was that each child would be "less likely to suffer trauma" testifying away from the defendant, the jury, and the over-all courtroom setting, and that formal courtroom testimony could intensify feelings of self-hate and possibly result in efforts by one child to hurt herself. The testimony of the social worker, Abigail Weinberg, was that both children feared losing their father and felt guilt that he might go to jail because of their disclosures, that both would therefore "fall apart emotionally on the stand,"[3] and

---

[2] Having held a demonstration of the equipment, the judge also found that it could "accurately reflect the visual images of the witnesses and other principals" in color, and that the sound equipment was in good working condition. See G. L. c. 278, § 16D (*b*) (7). This aspect of the judge's findings, made in advance of the recording, is not challenged by the defendant on appeal. We discuss, *infra,* our observations of the quality of the videotape actually shown to the jury.

[3] In this regard, both McComb and Weinberg testified that the children, who were six years and eight years of age, respectively, at the time of the hearing, were caught in a loyalty struggle regarding their father, were upset at their forced separation from him, and were hampered in therapy due to lack of contact with him. Having to face the defendant in person, or even to see his image on a television monitor, would intensify the trauma of testifying by increasing their guilt. This would be especially true for the older child, who better understood the implications of her disclosure. Dr. McComb emphasized that, for both children, allowing the out-of-courtroom testimony would help put out of their minds the fact that their father was watching and listening to them. It would, she testified, be "aiding and abetting the child's capacity to shut out the rest of the world while they do what is required of them."

that testifying before the jury would cause them the trauma of reliving their victimization.[4]

The judge, while allowing the Commonwealth's motion, indicated clearly her reservation about the statute's constitutionality under the State Constitution.[5] At trial, both child witnesses gave their testimony in a room separate from the courtroom where the jury and the defendant were located. Present in the room with each child witness were the judge, the prosecutor, defense counsel, the girls' grandmother (unbeknownst to the jury), and a video technician. Neither child was in the room

---

[4] There is, however, a lack of conclusive empirical data on the long range effects of face-to-face confrontation on child witnesses. Graham, Indicia of Reliability and Face To Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions, 40 U. Miami L. Rev. 19, 87 (1985). Accord *State* v. *Jarzbek,* 204 Conn. 683, 702 (1987). Experts are divided on the matter. *Id.* There is some indication that child witnesses can be given emotional support without resorting to video procedures. With proper pretrial support, court testimony actually may be therapeutic or cause little trauma. See Bulkley, Introduction: Background and Overview of Child Sexual Abuse, 40 U. Miami L. Rev. 5, 10 (1985). Much of the available literature indicates, also, that the pretrial handling of a case may determine the child victim's reaction to the judicial process. "Children are regularly forced to undergo multiple, duplicative interviews by a wide variety of professionals who have a legitimate interest in the children's welfare or in the prosecution of alleged crimes. Each successive interview, whether it is for medical, clinical, or legal purposes, requires a child to retell experiences and feelings which are usually embarrassing, frightening, guilt-invoking and anxiety-producing. . . . [Children] frequently get angry and frustrated with the process. They may take it upon themselves to put an end to such nonsense by completely shutting down all communication on the subject and refusing to answer any further questions." MacFarlane, Diagnostic Evaluations and the Use of Videotapes in Child Sexual Abuse Cases, 40 U. Miami L. Rev. 135, 136-137 (1985). See also Libai, The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System, 15 Wayne L. Rev. 977, 983-984 (1969). In this context, we note that both expert witnesses indicated that the absence of any relationship between the defendant and his children over a period of many months would tend to exacerbate their emotional trauma if they were required to testify in his presence. Neither expert witness knew (and presumably the children did not know) that the defendant's absence was caused by a court order.

[5] Given the presumptive validity of legislative enactments, *Commonwealth* v. *Neiman,* 396 Mass. 754, 756 n.4 (1986), the judge believed that the issue of the statute's constitutionality should be addressed "at the appropriate time by an Appellate tribunal."

during the testimony of the other. The defendant observed the testimony on a television monitor in the courtroom; two-way communication with his counsel was possible.[6] The jury and the court reporter observed the proceedings on a second television monitor in the courtroom.

Prior to the first child's testimony, the judge explained to the jury that they would observe such testimony on the courtroom monitor. She further explained that the defendant would remain in the courtroom, but that no adverse inferences were to be drawn from this procedure. The judge did not explain the process to either child, nor did she inform the children that the defendant would be watching and listening to their testimony. Indeed, the record is barren of any indication that either child knew that she was giving testimony against the defendant in a court of law.[7]

The defendant objects to the use of the closed circuit television procedure on the ground, inter alia, that art. 12 guarantees a "face to face" encounter in which the accused shall "meet" the witnesses against him.[8] The Commonwealth argues that

[6] The same procedure, without jury participation, governed the voir dire on competency that immediately preceded each child's testimony.

[7] We note, further, that, with witnesses so young, asking them to "affirm to tell the truth" or to suffer "the pains and penalties of perjury" measures inadequately their understanding of the duty to testify truthfully in the proceedings. See *California* v. *Green,* 399 U.S. 149, 158 (1970) (one aspect of confrontation right is that witnesses shall knowingly give testimony under oath). See also *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964); *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325-326 (1921), as to the competency requirements that a child show an awareness of a duty to tell the truth in a court of law.

[8] At the preliminary hearing, in his memorandum of opposition to the Commonwealth's motion and in his brief, the defendant raises squarely a constitutional challenge under art. 12. A Sixth Amendment claim also is raised. We note that the Supreme Court of the United States has heard argument on a case involving similar, but not identical, issues. See *State* v. *Coy,* 397 N.W.2d 730 (Iowa 1986), prob. juris. noted, 483 U.S. 1019 (1987), argued, 56 U.S.L.W. 3493 (Jan. 26, 1988) (where defendant, child witness, and jury were in courtroom, but one-way screen surrounding defendant prohibited witness from seeing him). We deem it appropriate to consider the State constitutional claims first. In light of the conclusion we reach under art. 12, we need not reach the Sixth Amendment claims.

Our decision rests solely on independent and adequate State constitutional

these words have "no essential meaning," and that allowing the defendant to see and hear a witness, while able to communicate with his attorney, satisfies completely Federal and State constitutional requisites.

1. *Confrontation rights under art. 12.* a. *Nature of the right.* We begin with the relevant language of art. 12: "[E]very subject shall have a right to produce all proofs, that may be favorable to him; *to meet the witnesses against him face to face,* and to be fully heard in his defence by himself, or his counsel, at his election" (emphasis added).

The familiar rule of constitutional construction guides our interpretation: "If possible, the [provision] must be construed so as to accomplish a reasonable result and to achieve its dominating purpose. Its words should be interpreted in the sense most obvious to the common intelligence . . . ." *Opinion of the Justices,* 365 Mass. 655, 657 (1974), quoting *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 317 (1950), and cases cited. Furthermore, "[w]ords of the Constitution cannot be ignored as meaningless." *Opinion of the Justices,* 332 Mass. 769, 777 (1955). "All [the] words [of the Constitution] must be presumed to have been chosen advisedly." *Mount Washington* v. *Cook,* 288 Mass. 67, 70 (1934).[9]

Underlying the confrontation guarantee is the concept that a witness is more likely to testify truthfully if required to do so under oath, in a court of law, and in the presence of the accused and the trier of fact. Constitutional language more de-

grounds under art. 12. "The Massachusetts Declaration of Rights can . . . provide greater safeguards than the Bill of Rights of the United States Constitution." *Commonwealth* v. *Hodge,* 386 Mass. 165, 169 (1982). Federal confrontation clause cases, unless specifying required constitutional minimums, are cited for illustrative purposes only.

[9] The Constitutions of Virginia, Pennsylvania, Delaware, Maryland, North Carolina, and Vermont contain "to be confronted with" or "to confront" language. The Massachusetts Declaration of Rights, which was adopted after these documents, was the first to use the language "to meet the witnesses against him face to face." The New Hampshire Constitution borrowed this language. See Larkin, The Right of Confrontation: What Next?, 1 Tex. Tech L. Rev. 67, 75-76 (1969). Presumably, the framers of our State Constitution were aware of the other States' provisions and chose more explicit language to convey unequivocally their meaning.

finitively guaranteeing the right to a direct confrontation between witness and accused is difficult to imagine. The plain meaning of assuring a defendant the right "*to meet* the witnesses against him *face to face*" is that the accused shall not be tried without the presence, in a court of law, of both himself and the witnesses testifying against him. To interpret the words of this mandate as requiring only that the defendant be able to see and hear the witness renders superfluous the words "to meet" and "face to face." [10] Speaking of this concept under the Sixth Amendment, the United States Court of Appeals for the Eighth Circuit stated in *United States* v. *Benfield,* 593 F.2d 815, 821 (8th Cir. 1979): "Normally the right of confrontation includes a face-to-face meeting at trial at which time cross-examination takes place. . . . While some recent cases use other language, none denies that confrontation required a face-to-face meeting in 1791 and none lessens the force of the sixth amendment. Of course, confrontation requires cross-examination in addition to a face-to-face meeting. *Davis* v. *Alaska,* 415 U.S. 308, 315 (1974). The right of cross-examination reinforces the importance of physical confrontation. Most believe that in some undefined but real way recollection, veracity, and communication are influenced by face-to-face challenge. This feature is a part of the sixth amendment right additional to the

---

[10] In recent years the Supreme Court has emphasized particularly the right to cross-examination under the Sixth Amendment. See, e.g., *Kentucky* v. *Stincer,* 482 U.S. 730, 744 n.17 (1987); *Davis* v. *Alaska,* 415 U.S. 308, 315-316 (1974); *Douglas* v. *Alabama,* 380 U.S. 415, 418 (1965). But see *Kentucky* v. *Stincer, supra* at 749 (Marshall, J., dissenting) (noting previous cases had arisen in contexts where defendant's right to physical presence never doubted). The right to cross-examine is only a part of the confrontation right, however. The right also entitles the defendant to have witnesses testify in his presence. See, e.g., *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 51 (1987) (the two types of Sixth Amendment protection are "physically to face those who testify against him" and to cross-examine); *Delaware* v. *Fensterer,* 474 U.S. 15, 18 (1985), quoting *California* v. *Green,* 399 U.S. 149, 157 (1970) ("right to 'confront' the witness at the time of trial . . . forms the core of the values" of confrontation clause); *Dowdell* v. *United States,* 221 U.S. 325, 330 (1911) (right to trial "by only such witnesses as meet him face to face at the trial, [and] who give their testimony in his presence"). But see *Kentucky* v. *Stincer, supra* (no Sixth Amendment right to presence at competency hearing where witnesses testified at trial in defendant's presence).

right of cold, logical cross-examination by one's counsel. While a deposition necessarily eliminates a face-to-face meeting between witness and jury, we find no justification for further abridgment of the defendant's rights. A videotaped deposition supplies an environment substantially comparable to a trial, but where the defendant was not permitted to be an active participant in the video deposition, this procedural substitute is constitutionally infirm." (Footnotes omitted.) See *State* v. *Twist,* 528 A.2d 1250, 1256 (Me. 1987) (Sixth Amendment confrontation right includes not only right to cross-examination but also right "to see and be seen by the witnesses").

In *State* v. *Jarzbek,* 204 Conn. 683, 692-693 (1987), the court stated, as to the Sixth Amendment confrontation right: "The clause finds its modern justification in the perceived role that physical confrontation plays in the truth-seeking process. Confrontation is intended to enhance that process in a number of ways: by affording the accused an opportunity for face-to-face contact with adverse witnesses at trial; by ensuring that a witness will give his statements under oath, which impresses upon him the seriousness of the proceedings and importance that he testify truthfully; by forcing a witness to submit to cross-examination, a practice designed to elicit the truth; and by aiding the jury in assessing the credibility of a witness by observing his demeanor on the stand. *California* v. *Green,* [399 U.S. 149, 158 (1970)]." [11]

Additionally, it is a mainstay of constitutional jurisprudence in this Commonwealth that a defendant has a corollary right to be present personally throughout his trial. "The principle of law . . . that a person indicted for a felony has the right to be *personally present* at every step of the proceedings against him in behalf of the Commonwealth, from arraignment to sentence, *Commonwealth* v. *Costello,* 121 Mass. 371, 372 [1876], *Commonwealth* v. *McCarthy,* 163 Mass. 458 [1895], is of ancient origin" (emphasis added). *Commonwealth* v. *Millen,* 289 Mass. 441, 452-453 (1935).

---

[11] In *Twist* and *Jarzbek, supra,* the courts held that this right may be overcome by countervailing considerations of public policy and the necessities of the particular case. See notes 13 and 14, *infra.*

This right to be present evolved early in criminal jurisprudence, affording an accused the opportunity to defend himself at all stages of the criminal process, however seemingly insignificant or unimportant. *Id.* at 453. With the advent of a right to counsel, the rigor of the rule abated regarding hearings "so remote and so collateral that it cannot be said that the presence of the defendants bore any relation reasonably substantial to their opportunity to defend against the crime charged." *Id.* at 457. See, e.g., *id.* at 454-455 (no right to presence at motions for change of venue or for postponement of trial);[12] *Commonwealth* v. *Costello, supra* (right to presence not applicable to hearing on motion for new trial); *Commonwealth* v. *Cody,* 165 Mass. 133 (1896) (right does not cover period between trial and sentencing). But see *Commonwealth* v. *McCarthy, supra* at 458-460 (right to presence when verdict delivered); *Commonwealth* v. *Robichaud,* 358 Mass. 300, 302-303 (1970) (right to be present at voir dire on juror misconduct).

Coming again to the accused's right "to meet" a witness against him "face to face," we note that we have never interpreted art. 12 as permitting introduction of an available witness's testimony outside a defendant's presence. Indeed, an unbroken chain of decisions mandates the opposite conclusion. In *Commonwealth* v. *Gallo,* 275 Mass. 320, 333 (1931), we declared: "The constitutional guaranty that every defendant charged with crime has the right to meet the witnesses against him face to face is not to be tested by a mere enumeration of specific instances of the admission or exclusion of defined evidence. [Article 12] in the Constitution states a great principle of government for the security of liberty and the ascertainment of truth in prosecutions for crime. Its purpose was to put beyond the possibility of alteration except by the people themselves the principle already established as a part of the common law *that the witnesses should confront the accused face to face*"

---

[12] While the court in *Millen* distinguished the right to be present from the right of confrontation embodied in art. 12, it described the confrontation right as being designed, in part, "to put beyond the possibility of abolition by legislative action the principle, already established as a part of the common law, that witnesses should confront the accused." *Id.* at 455.

(emphasis added). Indeed, art. 12 "was made to exclude any evidence by deposition, *which could be given orally in the presence of the accused*" (emphasis added). *Commonwealth v. Slavski,* 245 Mass. 405, 413 (1923), quoting *Commonwealth v. Richards,* 18 Pick. 434, 437 (1837). See *Commonwealth v. Canon,* 373 Mass. 494, 509 (1977) (Liacos, J., dissenting) ("right entitles the defendant to confront adverse witnesses personally"), cert. denied, 435 U.S. 933 (1978).

There are, of course, limited exceptions to the requirements of confrontation. As a constitutional minimum, if the prosecution can demonstrate that a declarant whose statement it wishes to use against the defendant is unavailable to testify during the trial, that statement may be admissible if imbued with such trustworthiness and indicia of reliability that "there is no material departure from the reason of the general rule." *Ohio v. Roberts,* 448 U.S. 56, 65 (1980), quoting *Snyder* v. *Massachusetts,* 291 U.S. 97, 107 (1934). See *Commonwealth* v. *Bohannon,* 385 Mass. 733, 742-743 (1982). Hearsay exceptions that provide particularized guarantees of trustworthiness may be constitutionally valid. *Commonwealth* v. *Trigones,* 397 Mass. 633, 637-638 (1986). Absent a showing of unavailability at the time of trial, however, even reliable hearsay evidence is inadmissible. See *Commonwealth* v. *Bohannon, supra* at 744-749. Even before *Ohio* v. *Roberts, supra,* this court concluded that prior statements of unavailable witnesses, recorded under trustworthy circumstances, were admissible under art. 12. See, e.g., *Commonwealth* v. *DiPietro,* 373 Mass. 369, 375-380 (1977); *Commonwealth* v. *Richards, supra* at 437-439. Additionally, when a witness is unavailable, the standard of admissibility is met when the admitted evidence is recognized as being an "acknowledged exception[ ] to the face to face rule of evidence" at the time of the State Constitution's adoption, e.g., public records or dying declarations. *Commonwealth* v. *DiPietro, supra* at 377, quoting *Commonwealth* v. *Slavski, supra* at 415.

Similarly, we have recognized narrow circumstances in which a defendant's Sixth Amendment or art. 12 rights must yield to unique interests. See *Murphy* v. *Superintendent, Mass.*

*Correctional Inst., Cedar Junction,* 396 Mass. 830, 832 (1986) (prison disciplinary proceedings; art. 12 does not grant inmates right to confront prison informants); *Commonwealth* v. *Pennellatore,* 392 Mass. 382, 388-390 (1984) (Sixth Amendment right to confrontation must bow to accommodate witness's Fifth Amendment right against self-incrimination as to collateral matter).

While under either the Federal or State Constitutions the right to confront witnesses is not absolute, this guarantee is paramount except in limited circumstances. See, e.g., *Commonwealth* v. *Two Juveniles,* 397 Mass. 261, 266 (1986) (in certain circumstances, nonconstitutionally based statutory privilege "must yield at trial to the constitutional right of a criminal defendant" to confront witnesses under Federal and State Constitutions); *Commonwealth* v. *Elliot,* 393 Mass. 824, 828 (1985) (despite statutory provisions, reversible error to exclude cross-examination of rape complainant designed to impeach credibility through showing of financial motive for seeking defendant's conviction); *Commonwealth* v. *Ferrara,* 368 Mass. 182, 183-190 (1975) (State policy of protecting witness's record of juvenile offenses from public exposure must yield to defendant's right to confrontation); *Commonwealth* v. *Johnson,* 365 Mass. 534, 543-544 (1974) (violation of art. 12 and Sixth Amendment to limit cross-examination because alleged victim feared, or did not desire to answer, questions). See also *Davis* v. *Alaska,* 415 U.S. 308 (1974).

The recognized exceptions to the right of direct confrontation at trial are not crime specific. They apply impartially to all situations which the constitutional guarantee governs. Article 12 does not discriminate against classes of defendants nor distinguish among categories of crimes. "A provision of the Constitution commonly is to be interpreted as stating a broad and general principle of government, *regulative of all conditions arising in the future and falling within its terms*" (emphasis added). *Opinion of the Justices,* 261 Mass. 523, 543-544 (1927). Accord *Opinion of the Justices,* 386 Mass. 1201, 1221 (1982). For constitutional purposes, no principled distinction can be drawn between a child witness and any other class whom

the Legislature might in the future deem in need of special treatment.[13] General Laws c. 278, § 16D, creates a rule of witness protection that is too broad to pass constitutional muster.[14] While we are willing to consider the validity of new tech-

---

[13] We reject the view implicit in *State* v. *Twist*, 528 A.2d 1250 (Me. 1987), and *State* v. *Jarzbek*, 204 Conn. 683 (1987), and of *State* v. *Cooper*, 291 S.C. 351, 353 (1987), indicating that special rules can be developed for certain classes of crime. We note that, in allowing the use of a child's videotape-recorded testimony, the Supreme Court of South Carolina was interpreting a general statute governing witnesses who are young, elderly, handicapped, or who have special needs. *State* v. *Cooper, supra*. During oral argument in *Coy* v. *Iowa*, argued, 56 U.S.L.W. 3493, 3494 (Jan. 26, 1988), the State conceded that the principle exempting child witnesses from direct confrontation is applicable to other categories of witnesses. Cf. *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 610 (1982) (same State interest in protecting child witnesses from trauma of open trial "could be relied on to support an array of mandatory closure rules designed to encourage victims to come forward"). Compare *Commonwealth* v. *Willis*, 716 S.W.2d 224, 230 (Ky. 1986) ("Confrontation does not require live presentation of evidence" since photographic or electronic presentation, while not a perfect substitute for live testimony, will suffice), with *State* v. *Jarzbek, supra* at 694 (rejecting assertion that videotape or television monitor is equivalent of face-to-face confrontation, since "eyeball-to-eyeball" meeting is required normally).

[14] There are courts in other States which have reached a different conclusion, either on State or Federal constitutional grounds. We are unconvinced that the reasoning of these opinions withstands proper constitutional scrutiny. Some courts, through a range of balancing tests, have abrogated a defendant's acknowledged right of direct confrontation without consideration or explanation of how this admittedly compelling State interest was to be distinguished from any other. See, e.g., *State* v. *Jarzbek, supra*; *State* v. *Twist, supra*; *Wildermuth* v. *State*, 310 Md. 496 (1987). Others more readily bend constitutional mandates in the press of social concerns. See, e.g., *Commonwealth* v. *Willis, supra*; *State* v. *Cooper, supra*. One court labeled as "dispensable" the demeanor aspect of the confrontation guarantee, stating further that it was "not constitutionally significant that [the defendant] was able to see and hear the [witnesses]." *State* v. *Coy*, 397 N.W.2d 730, 734 (Iowa 1986). At times, courts were in the unusual posture of sanctioning the elimination of face-to-face confrontation at trial, while mandating such confrontation at competency hearings. *State* v. *Jarzbek, supra* at 704 n.9. *Stincer* v. *Commonwealth*, 712 S.W.2d 939 (Ky. 1986), rev'd, *Kentucky* v. *Stincer*, 482 U.S. 730 (1987).

Other courts have relied on a variety of circumstances to determine that a defendant's right to confrontation had been satisfied. See, e.g., *State* v. *Coy, supra* at 731 (one-way screen surrounded defendant in courtroom); *Commonwealth* v. *Willis, supra* at 225-227 (upholding constitutionality of statute permitting videotape or closed circuit television testimony where

niques of preserving and presenting evidence at a criminal trial on a case-by-case basis, we are unable to uphold broad categorical exemptions from constitutional mandates.

b. *Jury observations of witness demeanor*. This final aspect of confrontation, testimony in the presence of the jury, "permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *California* v. *Green,* 399 U.S. 149, 158 (1970).[15] Evaluating a witness's credibility is one of the most difficult tasks facing a trier of fact. Sahm, Demeanor Evidence: Elusive and Intangible Imponderables, 47 A.B.A.J. 580 (1961). Personal observation of a witness aids immeasurably this process. What a juror's personal observation brings to bear is " ' [t]he natural and acquired shrewdness and experience by which an observant man forms an opinion as to whether a witness is or is not lying . . . . The most acute observer would never be able to catalogue the tones of voice, the passing shades of expression or the unconscious gestures which he had learnt to associate with falsehood; and if he did, his observations would probably be of little use to others.' " *Id.* at 581.

---

child need not be aware of defendant's presence); *State* v. *Twist, supra* at 1254 (deposition videotaped without judge and while defendant not visible to child); *State* v. *Cooper, supra* at 353 (videotape prerecorded while defendant observed on monitor from separate room).

[15] "The primary object of the [Sixth Amendment] was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* v. *United States,* 156 U.S. 237, 242-243 (1895). *Commonwealth* v. *Millen,* 289 Mass. 441, 455 (1935), is to the same effect.

A deposition does not necessarily deny a defendant the right to face his accuser directly and to cross-examine testimony. Rather, its vice is in preventing the jurors who are to judge the defendant from viewing for themselves this confrontation. See Larkin, The Right of Confrontation: What Next?, 1 Tex. Tech L. Rev. 67, 77 (1969).

We have screened carefully the videotape of the children's testimony.[16] Many of the technical aspects of these videotapes are troublesome. The color and sound were not true. The court reporter, who watched the jury's monitor, at times had difficulty hearing the proceedings, as did we. At one point, the screen went blank. Sounds that ordinarily would be minor background noises — such as a truck passing outside, or one of the attorneys ripping a piece of paper from a pad — when carried over the audio portion of the transmission were highly magnified and distracting. Often the child would play with the microphone wire, creating very loud crackling noises that interfered with both sound and concentration. Due to the camera angle, throughout much of the first child's appearance her right hand fully or partially obscured her face; at times, when she leaned back in the chair, her face was nearly out of camera range. The electronic techniques that were used showed neither the face of the judge presiding nor the image of the attorneys. The disembodied voices of the participants in the interrogations were transmitted. Also, unidentified persons were seen on the screen without explanation.[17]

A video machine does not simply transport evidence from the scene to the monitor. "In reality . . . the camera unintentionally becomes the juror's eyes, necessarily selecting and commenting upon what is seen. . . . 'Composition, camera angle, light direction, colour renderings, will all *affect the viewer's impressions and attitudes* to what he sees in the picture.' . . . [T]he picture conveyed may influence a juror's feelings about guilt or believability. For example, the lens or camera angle chosen can make a witness look small and weak or large and strong. Lighting can alter demeanor in a number of ways, misshaping features or, if directed from below, giving

---

[16] Although, as we have noted in note 2, *supra,* the defendant's attorney does not challenge the judge's ruling that such a videotape could "accurately reflect" the testimony given, we think that, in constitutional terms, a videotape should be required to convey to the jury more fully the totality of the circumstances involved in the giving of testimony.

[17] Neither the judge nor defense counsel, of course, was present in the courtroom to witness the picture as it was transmitted.

witnesses an evil or sinister cast. In fact, for most witnesses to appear natural, as they would in a live trial, the use of makeup may be required." (Emphasis added and footnotes omitted.) Comment, The Criminal Videotape Trial: Serious Constitutional Questons, 55 Or. L. Rev. 567, 574-575 (1976). Subtle indications of a witness's credibility, such as a blush or a nervous twitch, often may not be transmitted. *Id.* at 576. These problems are compounded when the recording is not made in a professional studio. *Id.* at 575. See generally *Hochheiser* v. *Superior Court,* 161 Cal. App. 3d 777, 786 (1984).

Absent compelling circumstances, a jury ought to be able to view the interaction between a witness and others who are present. The subtle nuances of eye contact, expressions, and gestures between a witness and others in the room are for the jury to evaluate. Hearing the disembodied, off-screen voices of the judge and the attorneys is not ordinarily an adequate substitute for witnessing personal interactions. Especially where child witnesses are involved, and great leeway for leading questions is allowed, jurors must be able to choose their own focus in looking for any direct or indirect influences on a child's testimony. Over-all, we cannot conclude that reducing the life-size picture of trial testimony to the image on a television screen affords to a jury the equivalent of personal observation.

While we do not say that testimony videotaped outside the physical presence of the jury never can be utilized, we conclude that the procedures utilized in this case fall short on two additional grounds. Thus, as stated, in addition to the denial of the defendant's right to be present and to confront the witnesses against him, the quality of the transmission of the videotapes used was insufficient to allow the jury properly to fulfil their responsibilities. Further, in the absence of a waiver, the Commonwealth must show, by more than a mere preponderance of evidence, a compelling need for use of such a procedure. Such a compelling need could be shown where, by proof beyond a reasonable doubt, the recording of the testimony of a child witness outside the courtroom (but in the presence of the defendant) is shown to be necessary so as to avoid severe

and long lasting emotional trauma to the child. See *State* v. *Jarzbek, supra*; *State* v. *Twist, supra*. In such circumstances, and also for the reasons we state in the next section, we think it better to excuse the jury during the taping of the testimony and, then, to play the videotape to the jury in the presence of the judge, the defendant, and the participating attorneys. Also, as we discuss in the following sections, such a procedure may be structured so as to be in compliance with the constitutional requirements of a public trial.[18]

2. *Other considerations*. In order to give guidance to trial judges, we note one other troublesome aspect of the procedures provided in § 16D. We question whether a fair trial can be realized when the judge is physically absent either from the courtroom or from the place where testimony is given during trial. "In general, evidence in a jury trial can be given only in the presence of the judge, whose duty it is to be present and to be the directing mind over whatever goes on. . . . It is a part of the right of trial by jury as established by the law of this Commonwealth that each party is entitled to the assistance and protection of the judge throughout the trial." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 30 (1923).

The judge's function goes beyond ruling on evidentiary matters. In her hands rests the responsibility of ensuring that a trial in its entirety proceeds fairly and properly. The defendant has a right to be tried and adjudged in a courtroom in which no spectators, jurors, or court personnel may influence inappropriately the final judgment.

It is simply inadequate to substitute for the judge's personal presence a television monitor allowing her a view of the defendant, the jury, the clerk, and the reporter. The spectator section and any area behind the video camera are outside the lens's scope. In such circumstances, a judge could not observe any prejudicial gestures or inappropriate activities on the part of

---

[18] "Today's decision should not be regarded as prohibiting the development of electronic video technology in litigation. Where the parties agree to a given procedure or where the procedure more nearly approximates the traditional courtroom setting, our approval might be forthcoming." *United States* v. *Benfield*, 593 F.2d 815, 821 (8th Cir. 1979).

spectators. Nor is it likely that a judge could hear any improper mutterings in response to ongoing testimony, since not even those persons within camera range have microphones. In short, a judge's physical absence from the courtroom renders proper control of the entire trial procedure an impossibility.

We emphasize that the presence of the judge throughout the trial is a matter of fundamental fairness, and not of technological degree. The very act of a judge's presiding over the trial has a profound and sobering influence on all those who are present in the courtroom. "[T]he core of our constitutional system is that individual liberty must never be taken away by shortcuts, that fair trials in independent courts must never be dispensed with." *Jay* v. *Boyd,* 351 U.S. 345, 369-370 (1956) (Black, J., dissenting).

3. *Conclusion.* This court is acutely aware of the plight of child sexual assault victims and traditionally has been sensitive toward meeting the needs of these young witnesses. See, e.g., *Globe Newspaper Co.* v. *Superior Court,* 379 Mass. 846, 858-860 (1980), rev'd, 457 U.S. 596 (1982). "[S]afeguarding the physical and psychological well-being of a minor" is indeed a compelling State interest. *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 607 (1982). We are cognizant, as the brief of the Attorney General, as amicus curiae, informs us, that the problem of child sexual abuse is widespread.

There is a legitimate concern about the difficulties a particular child may face in trying to testify in a traditional courtroom setting. In the case at bar, the expert witnesses were concerned about the effect on the children of their testifying in a large and formal setting. Within the strictures of the United States Supreme Court's holding in *Globe Newspaper, supra,* it is possible to shield a child, on a case-by-case basis, from testifying publicly. General Laws c. 278, § 16D (*b*) (8), moreover, appears to provide the option of permitting the child's testimony to take place in a less intimidating setting, and to be transmitted to the public by video monitor. The general interests at stake under the First and Sixth Amendments' value of open trials, however, see *id.* at 606, are not the same as those inherent in the

specific right to direct confrontation afforded a defendant under art. 12.[19]

We are, however, particularly troubled by a statutory procedure that allows a witness to testify out of the presence of the defendant and the jury when the witness is not made aware that she is giving testimony against the accused in a court of law. Society may justify a person's conviction only after a trial scrupulous in its adherence to a process which, so far as humanly possible, assures that the innocent are not mistakenly deprived of liberty. The right of the accused to be tried in the manner which our Constitution guarantees cannot dissolve under the pressures of changing social circumstance or societal focus. We have recognized before, in the context of interpreting art. 12, that "[c]hanged conditions afford no warrant for straining the Constitution." *Commonwealth* v. *Gallo,* 275 Mass. 320, 334 (1931). Similarly, in *Commonwealth* v. *Elliot,* 393 Mass. 824, 828 (1985), this court affirmed: "We are aware of the ordeal rape complainants must undergo in assisting the prosecution of their attackers. The Legislature has shown sensitivity to a complainant's plight. G. L. c. 233, § 21B. At the same time we cannot lose sight of the defendant's right, guaranteed . . . by art. 12 of the Commonwealth's Declaration of Rights, to confront adverse witnesses . . . ."

The courts too have recognized, and should continue to recognize, that traditional formalities of trials are not necessarily an integral part of protected constitutional rights. Our conclusion today should not be taken to preclude the use of methods by law enforcement agencies, lawyers, and trial judges designed to minimize the stress and trauma which may be imposed on victims and witnesses in cases such as the one at bar. Both before and during trial, measures can be taken to reduce the adverse impact of giving testimony. By way of example, a judge may require that the environment in which a witness is to give testimony be made less formal and intimidating, and that, before and after testimony is given, appropriate court-

---

[19] The Supreme Court has rejected, as speculative and illogical, arguments that closure of a trial usually improves the quality or credibility of children's testimony. *Globe Newspaper, supra* at 609-610 & n.26.

supervised counselling service be made available to a witness demonstrably in need of such help. Further, consistent with the guidelines indicated here, electronically preserved testimony in the absence of the jury and spectators should be allowed. These options are not exhaustive.

The judgments are reversed and the verdicts are set aside. The case is remanded for a new trial consistent with this opinion.

*So ordered.*