Alexander, J.
(concurring). I agree that the Appellate Division order must be reversed and the defendant given a new trial. I further accept the majority view that a defendant’s right to face-to-face confrontation with the prosecution witnesses is not absolute and deviations from that confrontation may be justified by specific findings of clear and convinc *268 ing evidence that such extraordinary procedures are necessary to protect an important government interest (majority opn, at 258-259). The court fails, however, to adequately address what I view as the primary constitutional question on this appeal— whether a statute permitting a witness to testify outside the actual presence of the trier of fact, whether or not such testimony is taken in the presence of the defendant, is constitutional on its face. I write separately to express my view that CPL article 65, which authorizes such a procedure, is facially valid, but that such a procedure is constitutionally permissible only when the People demonstrate, by clear and convincing evidence, that the particular procedures employed do not impair the jury’s ability to assess the demeanor and credibility of the vulnerable child witness.
The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him”. The core protection afforded by the clause is the right to a "face-to-face meeting with witnesses appearing before the trier of fact” (Coy v Iowa, 487 US 1012, 1016; see also, California v Green, 399 US 149,157). The clause also guarantees a criminal defendant the opportunity to cross-examine the witnesses against him or her. As the Supreme Court explained in Mattox v United States (156 US 237,242-243): "The primary object of the [Confrontation Clause] was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.” Fundamental to both these aspects of the confrontation right — the requirements that the witness testify in the physical presence of the defendant and be subject to cross-examination — is the requirement that the witness testify in the physical presence of the jury so that it is able to assess the witness’ demeanor and credibility (see generally, Larkin, The Right of Confrontation: What Next% 1 Tex Tech L Rev 67, 76-77 [1969]). It is only in this way that the confrontation secured by the clause promotes the integrity of the fact-finding process and thus the reliability of criminal verdicts (Lee v Illinois, 476 US 530, 540; California v Green, 399 US, at 158, *269 supra; Pointer v Texas, 380 US 400, 404) and advances the symbolic goal of "contributing] to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails.” (Lee v Illinois, 476 US, at 540, supra.)
Only one aspect of the right of confrontation was at issue in Coy v Iowa (supra). There, child witnesses were permitted to testify in full view of the jury and subject to unrestricted cross-examination, but because a screen was erected obstructing the witnesses’ view of the defendant, they were not compelled to confront the defendant while testifying. The court struck down the Iowa statute authorizing the procedure because it violated the defendant’s right to a face-to-face confrontation with the witnesses appearing before the trier of fact (Coy v Iowa, 487 US, at 1019-1020, supra). The court emphasized the significance of this literal right to face-to-face confrontation, but nonetheless declined to hold that right to be absolute; a majority of the court left the question for another day (id., at 1021), while Justice O’Connor, in an opinion joined by Justice White, expressly concluded that the right to a face-to-face meeting, like the right of cross-examination, was not absolute (id., at 1022-1025 [O’Connor, J., concurring]). Both the majority and Justice O’Connor agreed that any exception to the literal right of face-to-face confrontation would be justified only when necessary to further an important government interest (id., at 1022, 1024-1025 [O’Connor, J., concurring]). Moreover, more than a generalized finding of necessity is required; there must be a case-specific finding of the necessity of the exceptional procedure (id., at 1025 [O’Connor, J., concurring]).
Satisfaction of this test alone, however, justifies only a situation such as Coy where the sole aspect of the confrontation right denied the defendant is the right to a face-to-face meeting with the witnesses. It does not justify a procedure where, in addition to being shielded from the defendant, a witness is permitted to testify outside the actual presence of the trier of fact. In addition to determining that CPL article 65 satisfies the standards of Coy, the majority concludes that a defendant’s "witness-jury confrontation right” may be infringed only subject to "sufficient limitations and safeguards” (majority opn, at 259). The court merely addresses this issue in passing, however, offering no analysis in support of this conclusion and wholly failing to articulate the standard by which the People must demonstrate that this aspect of defendant’s *270 right of confrontation may be infringed. Thus I write separately to explain the constitutional basis for rejecting this aspect of defendant’s facial challenge to the constitutionality of the statute.
Although a majority of the Supreme Court has not recognized any exceptions to a defendant’s literal right to face-to-face confrontation (Coy v Iowa, supra), the court has recognized that the right of cross-examination is not absolute (see, e.g., Delaware v Fensterer, 474 US 15, 20 [expert witness’ failure to recall the foundation of his opinion does not violate Confrontation Clause because the clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish”]; compare, Davis v Alaska, 415 US 308 [restrictions on cross-examination violated Confrontation Clause]) and has upheld the admission of some hearsay evidence (see, e.g., Ohio v Roberts, 448 US 56 [admission of unavailable witness’ testimony at a prior hearing where defendant had the opportunity for cross-examination]; Mattox v United States, 156 US 237, supra [former testimony exception to the hearsay rule]). In the case of hearsay statements necessarily made by the declarant outside the presence of the trier of fact, the prosecution is required to demonstrate the reliability of the out-of-court statement (Ohio v Roberts, 448 US, at 66, supra). If the statement falls within a "firmly rooted hearsay exception”, reliability is inferred; otherwise the prosecution is required to demonstrate "particularized guarantees of [the] trustworthiness” of the hearsay statement (id.). Similarly, although the court has upheld the exclusion of a criminal defendant from a witness’ competency hearing, the exclusion was justified only because the witness was subject to full and effective cross-examination at trial on the very subject of the competency hearing, thus allowing the jury to determine the trustworthiness of the witness’ statements (Kentucky v Stincer, 482 US 730, 740). Thus the court’s decisions demonstrate that the right of confrontation secures to the defendant the right to have the witnesses testify in the presence of the trier of fact unless an out-of-court statement is shown to be sufficiently reliable to permit an exception to this rule.
The closed-circuit television procedure authorized by CPL article 65 permits a vulnerable child witness to testify from a testimonial room outside the actual presence of the jury (CPL 65.20 [1]) and, sometimes, outside the actual presence of the defendant as well (CPL 65.20 [12]). The jury is able to view the *271 witness through the use of equipment (i.e., a closed-circuit television monitor) which the statute requires to be sufficient to "permit the judge, jury, defendant and attorneys to observe the demeanor of the vulnerable child witness during his or her testimony” (CPL 65.30 [1]). This requirement, however, is not merely of statutory dimension; rather, the Constitution requires that the People demonstrate that the procedures and equipment employed in any given case do not impair the jury’s ability to assess the demeanor and credibility of a vulnerable child witness permitted to testify outside the courtroom. Moreover, because this closed-circuit television procedure is such a radical departure from the norm of criminal trials and because the technologies employed today are fraught with the danger of distorting the jury’s perception of the testifying witness, in my view the Constitution also requires the People to make this showing by clear and convincing evidence.
The inadequacies of closed-circuit television transmissions have been noted by courts (see, e.g., Commonwealth v Bergstrom, 402 Mass 534, 524 NE2d 366; Hochheiser v Superior Ct., 161 Cal App 3d 777, 208 Cal Rptr 273) and commentators (see, e.g., Comment, The Criminal Videotape Trial, Serious Constitutional Questions, 55 Ore L Rev 567, 574-575 [1976] [The Criminal Videotape Trial]; see also, Graham, Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions, 40 U Miami L Rev 19 [1985]; Bulkley, Background and Overview of Child Sexual Abuse: Law Reforms in the Mid-1980% 40 U Miami L Rev 5, 15 [1985] [collecting authorities]). While a television monitor conveys the image of the testifying witness to the jury, the color and sound may not be true, the witness’ voice may be distorted, minor background noises may be magnified so as to create significant distractions and other distractions such as the child witness playing with a microphone may result from the procedure itself (see generally, Commonwealth v Bergstrom, 524 NE2d, at 375, supra). There is also the possibility a phenomenon known as "status-conferral” may enhance the credibility of a witness whose testimony is presented by closed-circuit television (Hochheiser v Superior Ct., 161 Cal App 3d, at 787, 208 Cal Rptr, at 279 [citing authorities]).
Perhaps more detrimental to the jury’s ability to assess the demeanor and credibility of a witness who so testifies is the simple fact that "the camera unintentionally becomes the juror’s eyes, necessarily selecting and commenting upon what *272 is seen” (The Criminal Videotape Trial, 55 Ore L Rev, at 574-575), preventing the jurors from choosing their own focus in looking for the "passing shades of expression or the unconscious gestures” which the jurors might associate with falsehood (Commonwealth v Bergstrom, 524 NE2d, at 375, supra). Thus, if the witness’ image is conveyed in a close-up, a juror may be constrained to view the witness’ face when that individual juror might wish to view the witness’ hands or feet to determine, for example, whether nervous fidgeting belies the witness’ statements. A closeup focus on the witness is also inadequate because it excludes from the jury’s view the reactions of the attorney questioning the witness. Thus the jury may miss an attorney’s look of shock or dismay in reaction to the witness’ response to a question (The Criminal Videotape Trial, 55 Ore L Rev, at 577, n 69). If the entire image of the witness and the other people in the testimonial room is conveyed in a panorama, it is doubtful that many of the subtle nuances of the witness’ demeanor (a blush, for example) can be adequately conveyed (id., at 576). Alternating between close-ups and panoramic views is obviously unacceptable since it subjects the jury’s perception of the witness to even greater editorial discretion on the part of the camera operator (id., at 577, n 69).
Notwithstanding all these infirmities, given the possibility of greater sophistication in our present and future technology, I cannot say that the procedure authorized by CPL article 65 will always be constitutionally inadequate and therefore that the statute is unconstitutional on its face (McGowan v Bur-stein, 71 NY2d 729, 733). In light of all these problems with our present technology, however, I entertain grave reservations as to whether the People will ever be able to demonstrate that the statute may be constitutionally applied.