## COMMONWEALTH vs. GREGORIO RIOS
### (and five companion cases[1]).

Hampden. December 2, 1991. - March 12, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Practice, Criminal,* Disclosure of identity of surveillance location, Fair
trial, Presence of defendant. *Constitutional Law,* Confrontation of wit-
nesses, Fair trial. *Error,* Harmless.

Reversal of criminal defendants' convictions was required where the judge,
in violation of the defendants' right to confront witnesses against them
as set forth in art. 12 of the Massachusetts Declaration of Rights, ex-
cluded the defendants from a portion of their trial during which testi-
mony was presented. [212-214]

INDICTMENTS found and returned in the Superior Court
Department on November 15, 1988.

The cases were heard by *Constance M. Sweeney,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*M. Page Kelley,* Committee for Public Counsel Services,
for Gregorio Rios.

*Edward C. Bryant, Jr.,* for Elba Pratts.

*Elizabeth Dunphy-Farris,* Assistant District Attorney, for
the Commonwealth.

WILKINS, J. We reverse the defendants' convictions be-
cause, in violation of their constitutional rights, the trial
judge barred the defendants from a portion of their trial dur-
ing which testimony was presented. The judge excluded the
defendants, but not their counsel, from the courtroom during
the testimony of a police officer concerning the location from
which, as he testified, he saw the defendants engage in un-

---

[1]Two against Elba Pratts and three against Gregorio Rios.

lawful sales of drugs. The judge ruled as she did in response to the prosecutor's request that the place from which police officers saw the illegal activity not be disclosed. The judge instructed counsel for the defendants not to identify the witness's observation point to their clients.

The exclusion of the defendants from a portion of their trial violated their constitutional right to confront witnesses against them expressed in art. 12 of the Massachusetts Declaration of Rights. The State's interest in the confidentiality of a surveillance point may not be permitted to override a defendant's constitutional right of confrontation. There may be circumstances in which the Commonwealth is privileged not to disclose a point of surveillance during trial without violating a defendant's rights to confrontation and to a fair trial. The confidentiality of a surveillance site may not, however, be preserved by permitting the trier of fact to hear testimony from a witness outside of a defendant's presence.[2]

The defendants were tried along with four other persons in a jury-waived trial at which the others were found not guilty. The defendants before us were convicted of trafficking in cocaine and of conspiracy to traffic in cocaine. The defendant Rios was also convicted on two counts of unlawful distribution of cocaine. We transferred the defendants' appeals here on our own motion.

The Commonwealth's case was based on a purchase of cocaine by an "undercover" police officer, the testimony of Springfield police Officer John Leonard who had observed activities in front of a house on Medford Street in Springfield for several hours on the same day as the "undercover" purchase, and evidence seized pursuant to a search warrant issued and executed the day after the "undercover" purchase.

---

[2]Because we conclude that the defendants' State constitutional right of confrontation was violated, we need not deal with their further and somewhat related claim that their exclusion from the trial and the restriction on disclosure to them of the observation point also denied them their constitutional right to effective legal counsel.

Officer Leonard testified that on September 22, 1988, he conducted a surveillance of a residence at 14 Medford Street "[f]rom a secure location with a direct view of the home" at a distance of approximately twenty-five yards "[i]n the general area" across the street. The officer described various transactions that could have been found to have been transfers of plastic bags in exchange for money. Immediately in cross-examination, counsel for one of the defendants inquired of the officer as to exactly where he was. There was an objection by the prosecutor, followed by an extensive discussion between the judge and counsel. The prosecutor asserted that the site of the surveillance should be treated as privileged and cited *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494 (1987).[3] The Commonwealth argued that Medford Street is in a high crime area and that the police would lose the use of the vantage point if the site were disclosed. The judge conducted a hearing on the question whether the surveillance site should be kept confidential. There was evidence that a person could see the full length of Medford Street and a portion of Main Street from the site, which had been used many times before, and that, if one knew where to look, a person conducting a surveillance there could be seen.

The judge found that, if the location were to be disclosed publicly, the police would lose the site as a useful place for surveillance. She made no finding whether the disclosure of the site would place police officers in danger. She ruled preliminarily that the specific location might be entitled to protection from public disclosure. She then conducted a further hearing, in the absence of the defendants, concerning the exact location and whether it should be disclosed. Counsel were ordered not to reveal any information received during the hearing.[4] There is no doubt that counsel objected to the ab-

---

[3]At the time of this March, 1989, trial the opinion of this court on further appellate review in *Commonwealth* v. *Lugo*, 406 Mass. 565 (1990), had not been released.

[4]Although the judge at one point characterized the hearing as in camera and the transcript shows that the defendants were not present, it does not clearly indicate that the courtroom was closed to the public. We assume

sence of the defendants on confrontation and effective assistance of counsel grounds. Officer Leonard testified at length about the surveillance location and what he could see from it on September 22, 1988. The judge took a view.

In the absence of the defendants, the judge stated what she had seen during her view of the surveillance site, heard argument from counsel as to whether the location should be disclosed publicly, and found that the view from the surveillance site was unobstructed. She ruled that the government had a substantial interest in keeping the location confidential and that the defendants would not be prejudiced by not being present during Officer Leonard's testimony concerning the surveillance site because their counsel would be present, because counsel had heard the judge's observations concerning her view of the site, and because the subject of the testimony was physical observations.[5] The judge ruled, however, that defense counsel would be entitled to ask Officer Leonard, in front of the defendants, whether he was in a motor vehicle.

The voir dire hearing ended and the judge heard cross-examination and redirect examination of Officer Leonard, in the absence of the defendants, concerning his surveillance point and what he did there. In fact the questioning went well beyond the subject that the judge ruled should be kept confidential. All the in camera testimony bore directly on the defendants' guilt. When questioning about the surveillance site had concluded, the defendants were readmitted to the courtroom, and cross-examination of Officer Leonard continued. During that testimony, the officer testified that he had been in a motor vehicle and that anyone on the porch of the

---

that the courtroom was closed to the public during the time when the defendants were not in the courtroom.

[5]The judge stated that the situation might be different if the case were being tried to a jury. We do not reach the defendants' argument that the claim of surveillance point privilege should be rejected here because the prosecution failed to disclose its claim of privilege before the defendants waived jury trial. It appears from the transcript that the police may have decided to assert the confidentiality of the site without first discussing the matter with the prosecutor.

Medford Street house who had looked in the right direction could have seen where he was twenty-five yards away.

There is no doubt that generally a defendant has the right under art. 12 of the Declaration of Rights to be present during his trial. *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 543 (1988).[6] We are aware of no case that holds that it is constitutionally permissible to bar a defendant from seeing and hearing the trial testimony of a' witness against him, except in those situations in which the defendant's voluntary conduct has led to that result. See *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 751 (1981) (persistent disruptive behavior in the courtroom); *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307 (1975) (same); *Commonwealth* v. *Flemmi*, 360 Mass. 693, 694 (1971) (voluntary absence from trial constitutes a waiver of right to be present). Article 12 includes the right of a defendant to have the witnesses confront the accused face to face. *Commonwealth* v. *Gallo*, 275 Mass. 320, 333 (1931). See *Commonwealth* v. *Bergstrom*, *supra* at 544 ("we have never interpreted art. 12 as permitting introduction of an available witness's testimony outside a defendant's presence"). In the *Bergstrom* case, although the defendant saw and heard witnesses' testimony through closed circuit television transmission and could communicate with his attorney during that testimony, this court held nevertheless that the defendant's art. 12 right of confrontation was violated. Here, the defendants were denied the opportu-

---

[6]That right has been recognized even as to certain hearings during a trial not directly involving testimony against a defendant. See *Commonwealth* v. *Robichaud*, 358 Mass. 300, 303 (1970) (voir dire on juror misconduct); *Commonwealth* v. *Perez*, 30 Mass. App. Ct. 934, 935-936 (1991) (discharge and replacement of deliberating juror). The right does not apply, however, to certain preliminary motions (*Commonwealth* v. *Millen*, 289 Mass. 441, 454-456, cert. denied, 295 U.S. 765 [1935]), or to a motion for a new trial (*Commonwealth* v. *Bergstrom*, *supra* at 544, citing *Commonwealth* v. *Costello*, 121 Mass. 371, 372 [1876]). It has even been held that a defendant has no constitutional right to attend a view taken by a jury. *Commonwealth* v. *Snyder*, 282 Mass. 401, 412-414 (1933), aff'd, 291 U.S. 97 (1934) (five-to-four decision).

nity to hear a portion of the testimony of an adverse witness and to communicate with counsel concerning that testimony.

The denial of the defendants' constitutional right to be present during the cross-examination and redirect examination of Officer Leonard cannot be justified by the Commonwealth's interest in the confidentiality of the surveillance site. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 883-884 (1991). The only justification for the claimed confidentiality is that the police would like to use the location again. It might be that that sole reason for asserting the surveillance location privilege would justify preserving the confidentiality of a site. The result of a decision to preserve confidentiality should not, however, be the removal of a defendant from the courtroom, but rather a ruling that the location not be disclosed during the trial. It was the justification for confidentiality that the Appeals Court and then this court considered in *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494 (1987), *S.C.*, 406 Mass. 565 (1990). There is nothing in those opinions supporting the involuntary exclusion of the defendants from their trial.[7]

The Commonwealth does not strenuously argue that the removal of the defendants from the courtroom was not error. Rather it contends that any error does not require reversal of the convictions. It defends the judge's determination that the surveillance location should be kept confidential and argues that there was ample evidence to support the defendants' convictions quite apart from the testimony of Officer Leonard.

---

[7]The argument for confidentiality seems particularly weak in this case in light of evidence about the location disclosed in open court. That evidence showed that the surveillance was conducted in a motor vehicle parked somewhere across the street, and approximately twenty-five yards, from the Medford Street property at a place from which there was a direct view of the porch of the house, a full view of Medford Street, and a partial view of Main Street. One need not have had a course in advanced trigonometry to identify the general location of the surveillance site. The case for confidentiality is further weakened because here we are not concerned with protecting a confidential informant or an informant's property or even, in any significant way, with protecting the physical safety of police officers.

Even if we were to accept the argument that the violation of a defendant's art. 12 right of confrontation could be harmless error,[8] the Commonwealth must make an affirmative showing that the error was harmless in order to overcome the presumptive prejudice of the constitutional violation (*Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 399 [1975]), and must make that showing beyond a reasonable doubt. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 510 (1979). It is, of course, impossible for the Commonwealth to demonstrate that, if the defendants had been in the courtroom, the effect of Officer Leonard's testimony on the trier of fact would have been no less beneficial to the Commonwealth than it was in their absence. We cannot know, for example, what the defendants might have beneficially contributed to the cross-examination or rebuttal of the police officer. See *Commonwealth* v. *Robichaud*, 358 Mass. 300, 303 (1970). Nor can we know how his testimony, which was both incriminating and corroborative of other testimony (but not merely cumulative), may have affected the finding of guilt beyond a reasonable doubt. The convictions must be reversed and the cases remanded for a new trial.[9]

*So ordered.*

---

[8]Some constitutional rights are so basic that their violation can never be treated as harmless error. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 510 n.6 (1979); *Commonwealth* v. *Manning*, 373 Mass. 438, 443 (1977).

[9]Our reliance on the State Constitution should not be understood to indicate that a different result would be reached under principles stated in the Constitution of the United States. See *Illinois* v. *Allen*, 397 U.S. 337, 338 (1970); *Mann* v. *Dugger*, 817 F.2d 1471, 1476 (11th Cir. 1987), on rehearing, 844 F.2d 1446 (11th Cir. 1988), cert. denied, 489 U.S. 1071 (1989) ("the Sixth Amendment's right to confrontation, as incorporated into the Fourteenth Amendment, guarantees a defendant the right to be present when a witness is testifying against him during trial"). We decline to speculate, however, on the status of the concept of harmless error in these circumstances under the Constitution of the United States. See *Delaware* v. *Van Arsdall*, 475 U.S. 673, 680 (1986); *Snyder* v. *Massachusetts*, 291 U.S. 97, 116 (1934); *United States* v. *Toliver*, 541 F.2d 958, 965 (2d Cir. 1976).