COMMONWEALTH *vs.* SOLOMON C. NWACHUKWU.

No. 04-P-857.

Suffolk. September 13, 2005. - November 14, 2005.

Present: GREENBERG, KANTROWITZ, & MILLS, JJ.

*Constitutional Law,* Assistance of counsel, Confrontation of witnesses. *Practice, Criminal,* Assistance of counsel, Presence of defendant.

A new trial of a criminal complaint alleging sexual touching of an employee by a supervisor was warranted, where the defendant supervisor's counsel was ineffective in failing to introduce the complainant's work records, a significant piece of evidence at trial that could have been used both to impeach the complainant's testimony and to challenge her emotional reaction to the alleged touching [116-117]; and where, in violation of the defendant's constitutional right to be present at his trial and his right of confrontation, defense counsel told his client to wait outside the court room in response to the allowance of the Commonwealth's motion for sequestration [117-120].

COMPLAINT received and sworn to in the Brighton Division of the District Court Department on September 26, 2000.

The case was heard by *R. Peter Anderson,* J., and a motion for a new trial, filed on September 12, 2003, was heard by him.

*Estera Halpern* for the defendant.

*Christina E. Miller,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. In response to the allowance of the Commonwealth's motion for sequestration, inexperienced defense counsel[1] told his client to wait outside the courtroom. Fifteen minutes after the start of the bench trial in a busy District Court, the judge noticed the absence of the defendant and inquired as to his whereabouts. Told that he was outside due to the sequestra-

---

[1]Defense counsel had been an attorney since 1989 but was, needless to say, inexperienced in handling criminal trials. The defendant is represented by new counsel on appeal.

tion order, the judge indicated the obvious — that the order did not pertain to the defendant. The defendant was beckoned and the trial resumed, nothing being said about his absence. The defendant was found guilty on the two charges of indecent assault and battery on a person over fourteen. Ruling on the defendant's motion for a new trial, filed almost two years later, the trial judge, reasoning that the defendant had missed little of consequence during his absence from the courtroom, denied the motion. Based on our determination that counsel was ineffective, as well as our concerns about the constitutional violation, we reverse.

The defendant raises several issues in his appeal, only two of which need be addressed: whether counsel was ineffective, and the interrelated issue whether the absence of the defendant during a segment of the testimony of the complainant violated his right to be present at his trial and his right of confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by art. 12 of the Declaration of Rights of the Massachusetts Constitution.[2]

*Facts.* The defendant was a nursing supervisor at the Wingate Nursing Home (Wingate) in the Brighton section of Boston. The complainant was an eighteen year old high school student who worked there as a part-time kitchen aide. She alleged that on August 25, 2000, the defendant called her into his office whereupon he touched her breast and her vaginal area.

On the day of trial, prior to the complainant testifying, the prosecutor moved to sequester the witnesses.[3] The judge granted the motion and all the witnesses, including the defendant, at the

[2]The defendant also alleges that (1) poor courtroom acoustics deprived him of his right to confront witnesses against him, to effective assistance of counsel, and to a public trial; (2) inadmissible and unfairly prejudicial opinion testimony and improper fresh complaint testimony deprived him of a fair trial; and (3) the evidence was insufficient to warrant the guilty findings.

[3]It is unclear from the record which witnesses were initially sequestered with the defendant. However, those who eventually testified for the Commonwealth included the complainant, her mother, and Detective Erin Schroeder of the Boston police department. Testifying for the defense, in addition to the defendant, were Cynthia Nwachukwu (the defendant's wife), Rosemary McLaughlin (the administrator at Wingate), Claudia LeFrance (a nursing assistant at Wingate), and Adler Bernadin (a receptionist at Wingate).

direction of his counsel, left the courtroom.

During the defendant's absence, the complainant stated her name, age, and where she attended school. She also testified that she had worked at Wingate "[f]or about two to four months."[4] In addition, she said that her mother and sister also worked there and that on the day in question, she started work at 4:00 P.M.

At this point, the judge noticed that the defendant was absent.[5] The record is silent as to when the defendant actually returned to the courtroom. Appellate counsel presses that it is unclear exactly when the defendant reappeared and that additional damning testimony was offered in his absence. While the record could have been made clearer, the more reasonable inference is that the defendant appeared after the judge noticed his absence and the court officer indicated that he would retrieve him.[6]

The complainant then testified to the inappropriate touching, her reaction thereto — she pushed the defendant and ran to the bus stop to catch her bus — and the people she told about the incident. She further said that she did not go into work the following days, not returning until over a week later, on September 5, 2000, when the defendant again asked her to come to his office.[7] She went, but this time brought Adler Bernadin, the Wingate receptionist, with her. In general, the com-

---

[4] The complainant's work records, admitted in evidence at the evidentiary hearing on the motion for a new trial, indicate that she was hired on July 31, 2000, and that her last day of work was September 8, 2000. Accordingly, she worked at Wingate for six weeks during the summer of 2000.

[5] The colloquy went as follows:

> JUDGE: "Excuse me. I'm sorry. Wh- — where's the defendant?"
>
> DEFENSE COUNSEL: "I — I thought you wanted — including the defendant, I thought you — "
>
> JUDGE: "No; he always has the right to be here."
>
> COURT OFFICER: "I'll get him."

[6] The trial judge also noted in his decision on the motion for a new trial that he would not have permitted any further testimony to take place after he noted the defendant's absence.

[7] The complainant's work record report, see note 4, *supra*, indicates otherwise. It shows that she reported to work on August 25, 26, 27, 28, and 30, and September 1, 2, 3, 4, and 5.

plainant's testimony was contradictory with regard to several dates.[8]

Needless to say, the defendant's testimony differed significantly from that of the complainant. As a nursing supervisor at Wingate, he testified that he had to reprimand the complainant on three separate occasions between August 30 and September 6, 2000, for work-related reasons.[9] The defendant said that when he learned that she was the daughter of another Wingate employee, he contacted the complainant in order to obtain her mother's new telephone number for an updated Wingate employee directory because he was unable to reach the mother directly.[10] The defendant said he did not like the complainant's work attitude and denied touching her.

The judge found the defendant guilty, but remarked that he was "troubled by the . . . dates and the discrepancies regarding the dates."[11]

---

[8]For example, the complainant could not remember when she told her mother about the alleged incident; she first told the police detective that the alleged touching occurred on August 26, 2000 (the second contact with the defendant being on August 29), but ten days later told the detective that she had been confused about the dates and changed them to August 25 (inappropriate touching) and September 5 (the next date the defendant called her to his office); she told the administrator at Wingate, Rosemary McLaughlin, that the alleged touching had occurred on Saturday, September 2. Work records and the alibi testimony of the defendant's wife indicated that the defendant did not work that day.

[9]He testified that his first contact with the complainant was on August 30, when he had to reprimand her for making a lengthy private telephone call during work hours. He said that he again had to reprimand her on September 4, after he had seen her deliver a patient's food tray to the wrong floor. Concerning her last reprimand, see note 10, *infra*.

[10]To obtain her mother's new telephone number, which had recently been changed, the defendant said he contacted the complainant again on September 5 by leaving a message for her with the Wingate receptionist asking her to come to see him at the end of her shift. His last encounter with the complainant was the next day, September 6, when he said he verbally reprimanded her again because he had not yet heard from her mother.

[11]Approximately two years later, represented by new counsel, the defendant filed a motion for a new trial, for which an evidentiary hearing was conducted. Among other things, the defendant's trial counsel testified that the complainant's confusion about dates was used as part of his defense strategy. With regard to the defendant's absence from the courtroom, he said that he told the defendant to leave the courtroom, that in his recollection the defendant was absent for about five minutes, and that the defendant reentered shortly

*Ineffective assistance of counsel.* When evaluating claims of ineffective assistance of counsel we conduct a "discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). "We look at the question of assistance of counsel as a practical not an abstract matter." *Id.* at 98. See *Commonwealth* v. *Urena,* 417 Mass. 692, 699 (1994) (the defendant must show "actual prejudice"). To satisfy the second prong of the ineffective assistance claim, the defendant must show that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

We are concerned primarily with two aspects of counsel's representation. First, he sent the defendant out of the courtroom in response to an allowed motion to sequester. Suffice it to say, this was a major blunder, which we discuss below. Second, counsel failed to introduce the work records of the complainant that directly contradicted her testimony.

The complainant testified at trial that after the alleged touching on August 25, she did not return to work until September 5, because she did not "feel like going to work." Her work records demonstrated the opposite, that she worked eight of the ten days between August 25 and September 5. The case was a close one, with the main inculpatory evidence supplied by the complainant. Clearly, in affirming past cases, such evidence has been held sufficient to carry the Commonwealth's burden. Here, however, counsel had an opportunity to counter testimony with documentary evidence to the contrary, and failed to pursue it. To his credit, counsel did secure the work records of the defendant. Those records indicated that he was not working on

after the judge noticed his absence. The defendant, on the other hand, submitted an affidavit with his motion for a new trial in which he stated that he was outside the courtroom for about fifteen minutes before a court officer approached him and told him to go back inside. The defendant's estimate was adopted by the trial judge in his memorandum of decision.

September 2, the day the complainant told Wingate administrator Rosemary McLaughlin the incident occurred. Since counsel's strategy, as testified to at the hearing on the motion for a new trial, was to highlight the discrepancies among dates, there was no reason to ignore the highly compelling evidence contained in the complainant's work records. See *Commonwealth* v. *Alvarez*, 433 Mass. 93, 102 (2000). As counsel was able to obtain his client's work records, he should also have obtained those of the complainant from the same source.

We cannot say with confidence that this evidence would not "have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. at 115. See *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998) (counsel's failure to challenge evidence that the victim's body had the hallucinagen LSD in it deprived the defendant of an otherwise available substantial ground of defense); *Commonwealth* v. *Alvarez*, 433 Mass. at 101-102 (proper review of the defendant's medical records before trial would have shown the extent of the defendant's mental illness, which could have had a significant impact on the jury's assessment of the evidence).

The complainant's work records, if entered in evidence, could have accomplished two results. They could have been used to impeach the complainant's testimony that she did not return to work for a significant period of time after the alleged incident. In addition, they could have been used to challenge the complainant's emotional reaction to the alleged touching by showing that her testimony that she did not "feel like going to work" was wholly unsupported by her actions. By failing to introduce this significant piece of evidence at trial, defendant's counsel was ineffective.

*Absence from the courtroom.* Bedrock Federal and State constitutional principles ensure a defendant's right to both presence and confrontation at trial.[12] These rights, however, are not absolute and may be waived. See *Commonwealth* v. *Flemmi*,

---

[12]See Sixth and Fourteenth Amendments to the United States Constitution; art. 12 of the Declaration of Rights of the Massachusetts Constitution. See also *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 541-542 (1988) ("Constitutional language more definitively guaranteeing the right to a direct confrontation between witness and accused is difficult to imagine. The plain meaning of assuring a defendant the right '*to meet* the witnesses against him *face to*

360 Mass. 693, 694 & n.1 (1971) (defendant's voluntary failure to return to court constituted a waiver of his right of confrontation); *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 268-269 (1995) (defendant who is competent to stand trial may voluntarily and knowingly waive his right to be present); *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307 (1975) (defendant's right to be present at trial may be forfeited by misconduct).

Here, the defendant did not absent himself; he left only due to counsel's instructions. What is troubling is that upon his return, no one appeared particularly concerned about a violation of a fundamental constitutional right. Indeed, the testimony continued with nothing said of what had transpired. Given defense counsel's lack of experience in handling criminal cases, this is not surprising. The prosecutor and the judge, however, also stood silent.[13]

A similar situation occurred in an early Texas case, *Sullivan* v. *State*, 90 Tex. Crim. 170 (1921), where a criminal trial resumed after lunch without the presence of the defendant, who had not returned on time. The judge stopped the trial upon realizing the defendant was not present. Upon the defendant's return a few moments later, "the identical evidence given during his absence was reintroduced from [the same] witness." *Id.* at 173. The Texas Court of Criminal Appeals held "that the accused was confronted with the witnesses against him and given every opportunity to cross-examine and preserve any rights due him, and that he was present at his trial within the contemplation of [the Texas] statute," *id.* at 175, mandating the "personal presence of the accused in a felony case at the trial." *Id.* at 173.[14]

Generally, "any violation of a constitutional right gives rise

*face*' is that the accused shall not be tried without the presence, in a court of law, of both himself and the witnesses testifying against him"); Mass.R. Crim.P. 18, 378 Mass. 887 (1979).

[13]The trial judge addressed the issue in his memorandum of decision on the motion for a new trial and found that the complainant's answers to questions posed during the defendant's absence "were all information known to the defense and undisputed." He then ruled that the defendant's absence was "harmless error beyond any reasonable doubt."

[14]We note that cases such as the one before us, in which the defendant is absent from portions of the trial when witnesses testify against him, fortunately are few and far between. More common are cases involving scenarios where the defendant is not present at a sidebar conference or during jury selection.

to presumptive prejudice," requiring reversal of the conviction, unless the Commonwealth can make an affirmative showing that the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 399 (1975), citing *Commonwealth* v. *Robichaud*, 358 Mass. 300, 302 (1970).[15]

In *Commonwealth* v. *Rios*, 412 Mass. 208, 214 (1992),[16] involving the defendant's absence at trial from portions of the testimony against him, the court left open the question whether such a violation, even if preserved, could, indeed, be treated under a harmless error standard. Instead, the court noted that "[s]ome constitutional rights are so basic that their violation can never be treated as harmless error." *Id.* at 214 n.8. The court further noted that the Commonwealth must under any circumstances "make an affirmative showing that the error was harmless in order to overcome the presumptive prejudice of the constitutional violation." *Id.* at 214.

The Commonwealth urges us to distinguish *Commonwealth* v. *Rios, supra,* on the ground that the testimony there bore directly on the question of the defendant's guilt, while here only pre-

---

See, e.g., *Commonwealth* v. *Owens*, 414 Mass. 595, 605-606 (1993) (the defendant's absence from individual voir dire examination of the jurors at sidebar, attended by his lawyer, was harmless error because the lawyer conferred with the defendant prior to exercising his peremptory challenges); *Commonwealth* v. *White*, 37 Mass. App. Ct. 757, 762-763 (1994) (the defendant's absence from the entire jury selection process was an error not harmless beyond a reasonable doubt because of the importance of the right to be present during jury selection and the chance that the jurors' speculation about the defendant's absence could have adversely affected his case); *Commonwealth* v. *Caldwell*, 45 Mass. App. Ct. 42, 48 (1998) (the defendant's absence from a voir dire hearing on the question of juror misconduct was error harmless beyond a reasonable doubt because removal of a deliberating juror for cause was within the trial judge's discretion).

[15]As no objection was lodged at trial, there is support for the standard of review being a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bly*, 444 Mass. 640, 648 (2005). See also *Commonwealth* v. *Fowler*, 431 Mass. 30, 42 n.20 (2000).

[16]In *Commonwealth* v. *Rios*, 412 Mass. at 211, the trial judge permitted a police officer to testify outside of the presence of the defendant in order to keep secret a surveillance location the police intended to continue using. The court reversed the defendant's conviction, ruling that the Commonwealth failed to overcome the presumptive prejudice of the constitutional violation. *Id.* at 214.

liminary facts, already known to the defendant, were established. While the position has some appeal, we decline to distinguish *Rios* in this manner.

First, the testimony of the complainant was not merely introductory. She testified to working for a period of time longer than that which she worked. As the trial strategy was to highlight the discrepancies in her story, this stood as one additional potential falsehood.

Second, and in a more general sense, one practicality of the defendant's presence is to "communicate orally with his counsel in the course of a witness's testimony since he may have information which may aid his counsel in examining the witness." *Commonwealth* v. *Robichaud*, 358 Mass. at 303. In addition, "[m]ost believe that in some undefined but real way recollection, veracity, and communication are influenced by face-to-face challenge." *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 542 (1988), quoting from *United States* v. *Benfield*, 593 F.2d 815, 821 (8th Cir. 1979).

*Conclusion.* A case may be made that, standing alone, each of the trial errors was not so prejudicial as to warrant a new trial; that counsel was able to establish the discrepancies of the complainant without offering yet another, albeit more compelling, instance; and that the defendant missed little of the testimony against him. Given the combination of circumstances, though, we believe a new trial is necessary. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 576 (1985). As we have noted, we are also troubled by the lack of awareness and appreciation that in the face of a violation of a basic constitutional right, neither the judge nor the parties took any ameliorative actions. If, in fact, the matter were given the attention it deserved, in all likelihood either the defendant on the record would have waived any rights he held or, as was done in *Sullivan* v. *State, supra*, the complainant would simply have repeated her testimony.[17] In view of the shortcomings of counsel, the gravity of the constitutional violation, and the passivity of all concerned, as

---

[17]We recognize that the trial judge was working under poor, if not abominable, courtroom conditions and struggled mightily to overcome them.

well as the lack of strength of the Commonwealth's case, a new trial is mandated.[18]

> *Order denying motion for new trial reversed.*
>
> *Judgments reversed.*
>
> *Findings set aside.*

---

[18]In reading the transcript, we note that the complainant never formally identified the defendant in court. As the issue was not raised, we need not consider it.