Curtis Drue McGAHA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A05–0907–CR–402.

Court of Appeals of Indiana.

April 30, 2010.

Transfer Denied July 15, 2010.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Curtis Drue McGaha ("McGaha") appeals his conviction and sentence for Murder, a felony.[1]  We affirm.[2]

### Issues

McGaha presents three issues for review:

I.  Whether the trial court erroneously excluded evidence that the victim was known to have a supplier, "Sam," who arguably had a motive to kill the victim;

II.  Whether the trial court erroneously found the medical examiner to be an "unavailable" witness and admitted his deposition into evidence in lieu of his live testimony;  and

III.  Whether McGaha's sixty-year sentence is inappropriate.

### Facts and Procedural History

On December 13, 2008, Brandon Stock ("Stock") showed some friends, including McGaha, a high-quality type of marijuana that he called Pineapple.  Stock intended to offer it for sale at a price of $400 per ounce;  however, it was unaffordable to the unemployed McGaha.  A few days later, McGaha and Stock agreed that Stock would "front" an ounce to McGaha, so that McGaha could sell it to two other people.

On December 16, 2008, McGaha suggested to his live-in girlfriend, Ashley Shelton ("Shelton"), that she take their infant son Christmas shopping to be out of the way of an impending drug deal.  At about 7:40 p.m., Shelton left the residence and McGaha sent a series of text messages to Stock in anticipation of his arrival and the marijuana transaction.

About an hour later, as Shelton was shopping, she received a telephone call from McGaha indicating that he had spilled Kool–Aid on their carpet.  When Shelton returned home at about 9:30 p.m., she saw Stock's truck in the driveway but he was not present.  McGaha explained that Stock had left with a black man in a gray vehicle.  Shelton saw a reddish stain on the carpet that she assumed was Kool–Aid.  She also saw a blood smear in the kitchen, which McGaha attributed to their dog.  When Shelton came home the next day, the section of stained carpet had been cut out.

Soon thereafter, Shelton noticed that Stock's truck was gone.  McGaha told her

---

1.  Ind.Code § 35–42–1–1.

2.  We conducted oral argument in this case on April 8, 2010, at the University of Southern Indiana in Evansville, Indiana.  We thank counsel for their advocacy and extend our appreciation to the University of Southern Indiana for hosting the event.

that he assumed Stock had picked it up. Over the next few days, McGaha began to offer his friends and acquaintances Pineapple marijuana to sample or to purchase. When Stock's friends and family members began to search for Stock, McGaha explained that Stock had left his house with an unknown companion and had then texted to say that they had been stopped by police with ten pounds of marijuana in their vehicle.[3] After the Evansville Police Department began to search for Stock, McGaha sent a text message to Shelton: "if anyone asked the floor was like that when we moved in." (Tr. 112.)

On December 19th, while Shelton was at work, McGaha left their infant son with Shelton's mother and did not return to pick Shelton up from work. Shelton consented to a search of her home by the Vanderburgh County Sheriff's Department.[4] The deputies discovered that one wall of the master bedroom had some blood spatter and an indentation consistent with a strike from a baseball bat. Also, Stock's shoes were found inside the residence. During the early morning hours of December 20th, deputies discovered Stock's body lying among a pile of trash bags in the back yard. McGaha, who was located in Tennessee, was charged with murder.

Following his conviction by a jury, McGaha was sentenced to sixty years imprisonment. He now appeals.

### Discussion and Decision

#### I. *Exclusion of Third–Party Motive Evidence*

McGaha's proposed theory of defense was that another person, likely a drug supplier unpaid for his product, killed Stock and dumped his body in McGaha's back yard to frame McGaha. However, the trial court granted the State's motion in limine to exclude references to "third party motive" evidence, (App.37), and McGaha was not permitted to elicit testimony that Stock had a known supplier, described by Stock's friends as a Mexican called Sam living in south Evansville.[5]

■ Pursuant to Indiana Evidence Rule 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Evidence which tends to show that someone else committed the crime logically makes it less probable that the defendant committed the crime, and thus meets the definition of relevance in Rule 401." *Joyner v. State,* 678 N.E.2d 386, 389 (Ind.1997). However, under Evidence Rule 403, the evidence may be excluded if its probative value is out-weighed by unfair prejudice, confusion of the issues, or the potential to mislead the jury. *Pelley v. State,* 901 N.E.2d 494, 504 (Ind. 2009), *reh'g denied.* Before evidence of a third party is admissible, the defendant must show some connection between the third party and the crime. *Id.*

■ We review admissibility determinations by the trial court for an abuse of discretion, and reversal is appropriate only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner,* 678 N.E.2d at 390. In

---

3. When police officers later recovered Stock's cell phone and retrieved sent text messages, the purported text message did not appear.

4. Stock's family members made an initial report of a missing person to the Evansville Police Department. Thereafter, the Sheriff's Department assumed the investigation.

5. Nonetheless, McGaha argued in closing that there was an angry and unpaid drug supplier somewhere.

*Joyner*, the Indiana Supreme Court reversed the exclusion of third-party evidence. *Id.* at 389–90. The defendant sought to present evidence that a third party was having an affair with the victim, worked with her, had engaged in sexual relations with her the day before her disappearance, had argued with her the day of her disappearance, and had been late to work and falsified his time card the day after the disappearance. *Id.* Expert testimony revealed that a hair sample found inside the plastic bag covering the victim's head excluded the victim and the defendant, but was a high probability match to the third party. *Id.* Under such circumstances, the defendant had sufficiently connected the third party to the crime, and the excluded evidence could have established motive and opportunity. *Id.*

In contrast, the appellant in *Lashbrook v. State*, 762 N.E.2d 756, 757 (Ind.2002) was unable to demonstrate error in the exclusion of evidence that a third party had said the victim "was gonna die." There was an absence of material evidence that the third party was connected to the crime, and a "phrase allegedly uttered" by the third party did not "tend to show that [he] committed the murder." *Id.* at 758. In *Pelley*, the appellant had suggested that someone with whom one of the victims had a past association had a motive to murder him. 901 N.E.2d at 505. His offer of proof consisted of hearsay statements from two persons that one victim had worked at a Florida bank connected with money laundering, and hearsay within hearsay that a limousine with Florida license plates was seen near the victims' home on the day of the murders. *See id.* However, Pelley did not show that the witnesses were competent to testify regarding the circumstances in Florida, nor did he present any evidence connecting the bank or the limousine to the murders. The Court held that, "[a]bsent a more direct connection, the trial court did not abuse its discretion in excluding this evidence as too speculative." *Id.* at 506.

██ Here, McGaha submitted Defendant's Exhibit A "as an offer to prove." (Tr. 270.) This exhibit consisted of four "Case Supplemental Reports" compiled by investigators of the Vanderburgh County Sheriff's Office. Three interview subjects had been asked if they knew the identity of Stock's marijuana dealer. Chad Turpen, Matt Howard, and Adam Nance had referred to "Sam" who lived on the southeast side of Evansville. (Exhibit A, pgs. 1–3.) Additionally, the investigators had documented a telephone call wherein the caller reported that her acquaintance had stated that "a Mexican named Sam" had killed Stock. (Exhibit A., pg. 4.)

The sole trial witness with knowledge of the source of Stock's Pineapple marijuana was Zachary Howard. Howard testified, under a grant of use immunity, that he grew the marijuana in a closet and then fronted it to Stock, who was expected to produce prompt payment after the transaction with McGaha on December 16, 2008. Howard testified further that he became upset when Stock did not arrive promptly or return text messages on that evening, and began to text Stock claiming that he needed money for his supplier. According to Howard, he created the fictitious persona to pressure Stock, because Howard feared that Stock would take advantage of their friendship and delay payment.

The statements in the offer to prove exhibit do not indicate that any of the interviewed individuals had first-hand knowledge of statements or conduct on the part of "Sam." At most, one person had knowledge of a rumor. No one claimed that Stock did, in fact, owe "Sam" for any drugs, arguably giving rise to a motive for murder. Nor did anyone claim that "Sam"

had the opportunity to murder Stock and dispose of his body during the relevant time frame. In sum, McGaha was unable to offer any evidence connecting "Sam" to Stock's murder. Accordingly, we find no abuse of discretion in the trial court's evidentiary ruling in this regard.

## II. *Admission of Medical Examiner's Deposition*

Medical examiner Dr. Elmo Allen Griggs was deposed on April 12, 2009. At his deposition, he indicated that he would not be available for the re-scheduled trial date in May 2009 because of his daughter's college graduation in Virginia. McGaha filed a motion to exclude Dr. Griggs' deposition testimony, contending that Dr. Griggs was not "unavailable" but rather "inconvenienced." [6] (App.35.) The motion further stated that the deposition testimony references to "fixed lividity" on Stock's back caused McGaha to seek to cross-examine Dr. Griggs as to how long Stock's body was lying face-up. (App.35.)

The trial court conducted a hearing on the matter, and the parties agreed to a "continuation" of Dr. Griggs' deposition. (App.6.) On May 12, 2009, Dr. Griggs was again deposed, answering questions directed to Stock's probable time of death and placement of the body after death. At the outset of the trial, the State moved to publish Dr. Griggs' deposition, without objection from McGaha. However, when the videotaped deposition was presented to be played, McGaha objected that Dr. Griggs was not legally unavailable and that the

jury would be deprived of the opportunity to ask questions of Dr. Griggs.

The two-part videotaped deposition was played for the jury despite McGaha's objection. Therein, Dr. Griggs explained that Stock died from a blow to the head. His body also exhibited abrasions that Dr. Griggs found consistent with dragging. Dr. Griggs found it "difficult to assign a precise time of death" when he examined the body on December 20th, but thought the decomposition processes were consistent with Stock having died on December 16th. (App.90.) This opinion was unfavorable to McGaha's theory that Stock left McGaha's residence alive and well on the 16th but he was killed and his body discarded at a later time.

On appeal, McGaha contends that the admission of the deposition as substantive evidence violated his right of confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution. He claims that he sufficiently alerted the trial court that he was claiming a violation of his right of confrontation when he lodged his trial objection citing (1) the State's failure to satisfy unavailability criteria and (2) the jury's inability to question Dr. Griggs. The State concedes that Dr. Griggs was not "unavailable" as contemplated by Indiana Evidence Rule 804, but argues that McGaha did not preserve his allegation of error at trial and that the decision to admit Dr. Griggs' deposition is, if erroneous, merely harmless error.

6. Pursuant to Indiana Evidence Rule 804, a person is unavailable as a witness when the declarant:
   (1) Is exempted by ruling of the court on the ground of privilege from testifying;
   (2) Persists in refusing to testify despite a court order;
   (3) Testifies to a lack of memory on the subject matter;
   (4) Is unable to be present or testify because of death or then existing physical or mental illness or infirmity; or
   (5) Is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means.

In light of the State's reliance upon the facts that McGaha's trial objection came after the deposition was published without objection and absent an explicit reference to either the United States or Indiana Constitutions, McGaha also argues fundamental error. Appellate courts may, on rare occasions, resort to the fundamental error exception although a claim has been procedurally defaulted. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind.2008). Nonetheless, fundamental error is shown only when the record reveals a "clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id.*

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person. "Whether a witness is unavailable for purposes of the Confrontation Clause is a question of law." *Fowler v. State*, 829 N.E.2d 459, 465 (Ind. 2005). With regard to unavailability, our Indiana Supreme Court has stated that "[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial." *Garner v. State*, 777 N.E.2d 721, 724 (Ind.2002). "The issue is not whether the witnesses were out-of-state at the time of trial, but whether the State made a good faith effort to obtain the absent witnesses' attendance at trial." *Id.*

The videotaped deposition was recorded in two parts, with McGaha and his attorney present. During the deposition, McGaha's attorney extensively questioned Dr. Griggs regarding rigor mortis, fixed lividity, putrification, and other indicators of the time of death and placement of the body after death. Clearly, Dr. Griggs' videotaped deposition was not admitted without McGaha having had the opportunity to cross-examine him. On the other hand, the record does not reveal efforts by the State to gain the attendance of Dr. Griggs at the trial. There is no indication that a subpoena was issued to Dr. Griggs or that the State moved to continue the trial date. "A mere vacation is not sufficient to circumvent the right of confrontation." *Id.* at 725. Nonetheless, a denial of the right of confrontation may be harmless error. *Id.*

Errors in the admission or exclusion of evidence are disregarded as harmless unless the errors affect the substantial rights of the party. Ind. Trial Rule 61; *Wilson v. State*, 770 N.E.2d 799, 802 (Ind. 2002). In order to determine whether an error in the admission of evidence affected a defendant's substantial rights, we consider the probable impact of that evidence upon the jury. *Id.*

Here, it was not disputed that Stock died from blunt force injury to the head, as Dr. Griggs testified. The time of death and whether the body had been moved recently before discovery were points of contention. While Dr. Griggs found it likely that Stock was killed on December 16th, he left open the possibility that the time of death was later and also conceded the possibility that Stock's body had been moved after December 16th. Apart from Dr. Griggs' opinion testimony, the jury heard abundant evidence from friends and acquaintances of Stock and McGaha relative to the probable time of death. The State introduced evidence that

Stock told friends he was meeting with McGaha on December 16th but last communicated with anyone shortly after 8:00 p.m. that evening. About an hour later, McGaha was advising his girlfriend that Stock had gone off with some unidentified person, leaving his truck behind.

McGaha was the last person known to see Stock alive. Stock's vehicle was left at McGaha's residence. It was moved a few days later, to a nearby neighborhood. The same evening of Stock's disappearance, Shelton observed blood on her kitchen floor and a red substance covered with a towel on carpet (which McGaha promptly cut out). Contemporaneously, McGaha was observed by several acquaintances to be in possession of Pineapple marijuana, something unaffordable to him. McGaha offered vague explanations for Stock's disappearance before he attempted to influence Shelton to give false information to deputies. McGaha then fled to Tennessee. Deputies searching the McGaha/Shelton residence found Stock's shoes in the house and observed a dented wall splattered with Stock's blood. Ultimately, they found Stock's body in McGaha's yard, laid among trash bags. In light of this evidence, it is unlikely that the admission of Dr. Griggs' deposition impacted the jury such that McGaha's substantial rights were adversely affected.[7]

### III. *Sentence*

Finally, McGaha contends that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B). In *Reid v. State,* the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind.2007) (internal quotation and citations omitted).

More recently, the Court reiterated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind.2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. *See id.* at 1224. One purpose of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224.

A person who commits murder has a sentencing range of between forty-

---

**7.** McGaha also makes a cursory allegation that the jury was "denied the ability to probe witnesses directly with questions." Appellant's Brief at 23. However, he fails to develop a cogent argument in this regard. He observes that the promulgation of Indiana Jury Rule 20 and Indiana Evidence Rule 614 expanded the role of jurors, but does not claim that the jurors' ability to propound questions was encompassed within his Sixth Amendment right of confrontation or his right of face-to-face confrontation under Article I, § 13 of the Indiana Constitution.

five years and sixty-five years, with the advisory sentence being fifty-five years. Ind.Code § 35–50–2–3. As such, McGaha received a sentence five years above the advisory. He requests a revision to five years below the advisory.

The nature of the offense is that McGaha lured Stock to his death with promises that he could sell Stock's marijuana. McGaha brutally beat his friend to death and gained $400 worth of marijuana. He then discarded Stock's body with the trash. McGaha spent the next few days trying to hide his crime and market his ill-gotten gain, before he ultimately fled to Tennessee.

McGaha's character is such that, at age twenty-three, he had a criminal history consisting of two counts of theft, two counts of fraud, and one count of auto theft, all Class D felonies.[8] He also had five misdemeanor convictions.

In sum, in light of the nature of the offense and the character of the offender, we do not find a sentence of five years more than the advisory sentence to be inappropriate.

Affirmed.

MAY, J., and BROWN, J., concur.

---

**8.** McGaha complains that the trial court gave too much weight to his non-violent past offenses. However, an allegation that the trial court improperly weighed aggravating or mitigating circumstances is not subject to appellate review. *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind.2007).