NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1971                                        Appeals Court

COMMONWEALTH  vs.  JOSENER DORISCA.

No. 13-P-1971.

Plymouth.        September 11, 2015. - December 23, 2015.

Present:  Vuono, Agnes, & Maldonado, JJ.

Homicide.  Constitutional Law, Confrontation of witnesses.
    Practice, Criminal, Confrontation of witnesses, Harmless
    error, Argument by prosecutor.  Evidence, Previous
    testimony of unavailable witness, Unavailable witness,
    Relevancy and materiality.  Witness, Unavailability.
    Error, Harmless.

Indictment found and returned in the Superior Court
Department on June 27, 2008.

The case was tried before Richard J. Chin, J.

Andrew S. Crouch for the defendant.
Jessica R. Heaton, Assistant District Attorney, for the
Commonwealth.

AGNES, J.  The purpose of the confrontation clause is "'to

put beyond the possibility of alteration except by the people

themselves the principle already established as a part of the

common law that the witnesses should confront the accused face

to face' . . . [in order to] 'exclude any evidence by deposition, which could be given orally in the presence of the accused.'" Commonwealth v. Bergstrom, 402 Mass. 534, 544-545 (1988), quoting from Commonwealth v. Gallo, 275 Mass. 320, 333 (1931), and Commonwealth v. Slavski, 245 Mass. 405, 413 (1923).[1] See Coy v. Iowa, 487 U.S. 1012, 1015-1016 (1988). There are only limited exceptions to this right. Bergstrom, 402 Mass. at 545-546. One such exception is when the prosecution demonstrates that a witness is unavailable to testify during the trial, and that she has made a statement out-of-court that is sufficiently trustworthy and reliable to qualify for admission under a recognized exception to the hearsay rule. Id. at 545.

In this case, in which the defendant was tried before a jury and convicted of murder in the second degree, we must decide whether the judge erred in concluding that the witness was unavailable without requiring the Commonwealth to provide additional information about her condition and without considering whether alternative arrangements were feasible as required by Commonwealth v. Housewright, 470 Mass. 665, 671-673 (2015). Although the judge did not have the benefit of

---

[1] "A deposition does not necessarily deny a defendant the right to face his accuser directly and to cross-examine testimony. Rather, its vice is in preventing the jurors who are to judge the defendant from viewing for themselves this confrontation." Bergstrom, 402 Mass. at 548 n.15.

Housewright, we conclude that it is applicable to this case,[2] and that it was error to admit the witness's deposition in evidence. However, we also conclude that the erroneous admission of the videotaped deposition was harmless beyond a reasonable doubt.

Background.  1.  The shooting death of the victim.  On June 8, 2008, the victim and the defendant attended a graduation cookout on Turner Street in the city of Brockton.[3]  Numerous eyewitnesses, along with the defendant, testified that the victim, Bensney Toussaint, confronted the defendant at the cookout and initiated a physical altercation.[4]  Shortly thereafter, the victim was found dead from multiple gunshot wounds on a grassy area near the party.  Many witnesses testified that they heard the gunshots or saw the sparks from

---

[2] In Housewright, decided after the trial in this case, the Supreme Judicial Court established a framework for judges "to analyze whether a witness is unavailable because of illness or infirmity."  470 Mass. at 671.  Such a framework had not previously existed.  We agree with the parties that Housewright does not establish a new constitutional rule but, instead, amplifies existing Massachusetts law.  Ibid. ("[W]e have yet to provide trial judges with a framework to analyze whether a witness is unavailable because of illness or infirmity.  We do so now").  As in Housewright, nothing in this case turns on the differences between a criminal defendant's confrontation clause rights under art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution.

[3] Prior to opening statements the jury went on a view to the area of Turner Street in Brockton.

[4] The victim and the defendant had exchanged words on at least one prior occasion; the victim was dating the mother of the defendant's children.

the gun during the struggle between the defendant and the victim. None of the witnesses identified the defendant as the person who fired the shots, but there was compelling circumstantial evidence that was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt.[5] This evidence included eyewitness testimony that only two men were fighting, one of whom was the defendant and the other the victim, and conduct of and statements made by the defendant indicating consciousness of guilt. It could be inferred from the testimony of one of these witnesses, Kenny Cesar, that several shots were fired by the defendant as the two men struggled on the ground, and additional shots were fired by the defendant as he stood over the victim.

First responders to the scene found the victim surrounded by a large crowd of people. Someone was attempting to administer cardiopulmonary resuscitation (CPR). The victim was bleeding, and first responders observed that he had multiple gunshot wounds. Emergency medical personnel performed CPR at the scene and then transported the victim by ambulance to Brockton Hospital, where he was pronounced dead. The victim had suffered several gunshot wounds, including one on the back of the head and one on the left side of the head. He also suffered

---

[5] The gun was never recovered.

four chest wounds, resulting in two exit wounds in his back and two rounds remaining in his body.

The defendant testified that he did not have a gun and did not shoot the victim. He conceded that he and the victim fought, but explained that he tried to free himself and flee, but was being held down and punched by the victim. He said that they were surrounded by the friends of the victim. The defendant further testified that he heard a "boom." He felt the victim move off him and drop. The defendant heard four more "booms" and then saw that the victim was on his side with his legs still wrapped around the defendant's waist. The defendant moved the victim's legs and "took off." He testified that he saw his cousin, Rodley Doriscat, running away holding a gun.[6]

The defendant testified that later in the evening he met Rodley, who told him that during the fight, Rodley thought the defendant's life was in danger, so Rodley poked the victim with a gun to get him off the defendant, but the victim grabbed his arm and Rodley shot him. Rodley dropped the defendant off in Randolph and returned one hour later with two prepaid phones. The pair then drove to New York City. The next morning the defendant bought a bus ticket to Fort Lauderdale, Florida. The defendant testified that Rodley told him that he was "gonna try

---

[6] To avoid confusion, we refer to Rodley by his first name.

[his] best to do what [he had] to do," which the defendant understood to mean that Rodley would turn himself in to the police, but he "need[ed] some time." Rodley never went to the police. He committed suicide some three years before trial. The defendant remained in Florida for nearly three years until he was arrested on unrelated charges.[7] This led to the discovery of the outstanding warrant for his arrest for the victim's murder.

Additional facts will be discussed below in connection with the specific issues raised by the defendant.

2. <u>The availability of the medical examiner</u>. Two months prior to trial, the Commonwealth moved for a continuance on the basis that its medical examiner, Dr. Kimberley Springer, would be on a six-month maternity leave on the scheduled date of the trial and would be unable to testify. The motion was denied without prejudice. The judge instructed the Commonwealth to find a substitute witness. A few weeks later, the Commonwealth again moved for a continuance because the digital photographs from the victim's autopsy had been corrupted and were unavailable for examination by a substitute medical examiner. This motion also was denied without prejudice to give the

_____

[7] Massachusetts State police Trooper Keith Sweeney testified about the various investigative measures that were used in an unsuccessful effort to locate the defendant and Rodley following the shooting.

defendant time to decide whether he would waive his confrontation clause rights. The defendant declined to do so. The Commonwealth then submitted a motion to conduct a deposition of Dr. Springer. See Mass.R.Crim.P. 35, 378 Mass. 906 (1979). This motion was allowed, and Dr. Springer was deposed on videotape in a court room before the trial judge. There was direct, cross, and redirect examination of the witness.[8]

On day five of the trial on Friday, March 15, 2013, the Commonwealth moved to introduce the videotaped deposition in evidence. Over the defendant's objection, the judge found that Dr. Springer was unavailable to testify based on the report made by the prosecutor on Monday of that week that she had gone into labor. The videotaped deposition was played for the jury.[9] The

---

[8] The defendant does not raise any objection to the manner in which the deposition was conducted. See Mass.R.Crim.P. 35(e) ("The scope and manner of examination and cross-examination at the taking of the deposition shall be such as would be allowed in the trial itself"). In particular, the defendant does not contend that the deposition did not qualify as an exception to the hearsay rule. See Mass. G. Evid. § 804(b)(1) (2015). Also, the defendant does not raise any objection to the jury instructions given by the judge with respect to the deposition. The judge sustained the defendant's objection to the medical examiner's testimony opining on the pain the victim possibly experienced, and that portion of the video recording of the deposition was redacted.

[9] The discussion at trial of Dr. Springer's unavailability on Friday was as follows:

> Defense counsel: "Your Honor, please I know it's the Commonwealth's intention to play the deposition of Doctor Springer this morning. I object. I don't

defendant contends that the admission of the videotaped deposition was reversible error because it deprived him of his State and Federal constitutional rights under the confrontation clause.

Discussion. 1. The legal framework for determining that a witness is unavailable due to infirmity or illness. The confrontation clause, as it appears in both art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution, "establishes 'a rule of necessity, i.e., that the prosecution either produce, or demonstrate the unavailability of, the declarant.'" Commonwealth v. Housewright, 470 Mass. at 670, quoting from Commonwealth v. Roberio, 440 Mass. 245, 247 (2003). See Mass. G. Evid. § 804(a)(4) (2015). In Housewright, 470 Mass. at 671,

---

believe that they have shown that she's unavailable. The last we heard was that four days ago she was in labor. We don't know if she delivered. I don't know anything about it. I would suggest that even if she did deliver on Monday that doesn't mean she's unavailable today and I object."

The court: "Right."

Prosecutor: "Your Honor, she went into labor on Monday. I'm not sure when she had the baby, but I would say four days after giving birth, even if she had it on Monday, she would still be unavailable at this time."

The court: "Yeah. I think she is unavailable. I'm going to allow the video to be played. The objection's overruled."

the Supreme Judicial Court clarified the requirements for a

judicial determination of unavailability:[10]

> "Where the Commonwealth claims that its witness is
> unavailable because of illness or infirmity and that it
> wishes to offer in evidence the prior recorded testimony of
> that witness, the Commonwealth bears the burden of showing
> that there is an unacceptable risk that the witness's
> health would be significantly jeopardized if the witness
> were required to testify in court on the scheduled date.
> To meet this burden, the Commonwealth must provide the
> judge with reliable, up-to-date information sufficient to
> permit the judge to make an independent finding.  See
> Commonwealth v. Bohannon, 385 Mass. 733, 744-745 (1992)
> (second motion judge could not rely on first motion judge's
> unavailability determination made eight months before
> trial)."

The court explained further that such information must be

sufficiently detailed "about the witness's current medical

condition to allow the judge to evaluate the risk that would be

posed if the witness were to testify in court -- a conclusory

assertion is not enough."  Ibid.  In assessing whether the risk

to the health of a witness who is scheduled to testify is

unacceptable, Housewright added that "a judge should consider

the probability that the witness's appearance will cause an

adverse health consequence, the severity of the adverse health

consequence, such as whether it would be life-threatening, the

importance of the testimony in the context of the case, and the

---

[10] In Housewright, the Supreme Judicial Court limited its decision to "the meaning of unavailability in criminal cases where the Commonwealth is the proponent of the evidence, thereby implicating the defendant's right of confrontation."  470 Mass. at 670 n.8.

extent to which the live trial testimony would likely differ from the prior recorded testimony." Id. at 672.[11]  Furthermore, in Housewright, the Supreme Judicial Court stated that the confrontation clause is not satisfied if the judge simply determines that on the day a witness is scheduled to testify at trial her appearance would create an unacceptable risk to her health.  Ibid.  Instead, Housewright indicates that the judge must consider whether the risk would become acceptable if the trial is continued.  Ibid.  "Thus, a witness is unavailable if there is an unacceptable risk that the witness's health would be jeopardized by testifying in court on the scheduled date and either (1) a continuance would not reduce the risk to an acceptable level, or (2) a continuance would make the risk acceptable but would not serve the interests of justice" (emphasis added).  Id. at 672-673.[12]

---

[11] In Housewright, the court also explained that judges are not limited to the information provided by the parties.  "A judge, in his or her discretion, may require more information than is contained in a doctor's letter regarding the witness's medical condition, and may direct the means to obtain that additional information, such as a supplemental letter or affidavit, a call to the physician over speaker telephone in the presence of the attorneys, a deposition of the physician, or a court hearing." Housewright, 470 Mass. at 672.

[12] In Housewright, the trial judge admitted the prior recorded testimony of a witness given at a pretrial detention hearing under G. L. c. 276, § 58A, whose testimony placed the defendant at the scene of the shooting, based on a letter from her doctor that stated as follows:  "[The witness] is a 74 year old patient under my care for:  cardiomyopathy, coronary artery

2.  Application of the Housewright framework.  As noted above, the judge in this case did not have the benefit of the framework developed in Housewright for determining whether a witness is unavailable to testify at trial due to an illness or an infirmity.[13]  However, on the fifth day of trial, based entirely on the prosecutor's report that four days earlier, Dr. Springer had gone into labor, the judge ruled that Dr. Springer

_____

disease, peripheral vascular disease, arthritis and angina.  It is my medical opinion that the stress of testifying in court might be detrimental to her health.  I urge you to exclude her from your witness list."  470 Mass. at 669-670.  "The letter also provided the doctor's office telephone number '[i]f you require additional information.'"  Id. at 670.  The doctor's letter was dated October 24, 2011, and the first day of trial was November 15, 2011.  The judge's ruling that the witness was unavailable at trial was based solely on the doctor's letter. The court concluded that the letter was not sufficient to support the judge's ruling, and faulted the Commonwealth for not making a "'good faith effort' of providing timely notice to the court and the defendant of its claim of unavailability."  Id. at 675.

[13] The record indicates that the prosecutor and the judge took prudent and timely steps prior to trial in light of the possibility that Dr. Springer would not be available to testify at trial.  The Commonwealth informed the judge and the defendant in a timely manner of Dr. Springer's pregnancy and pending maternity leave, and sought a continuance of the trial date.  In early February, 2013, when the prosecutor learned that she would not be able to use a substitute medical examiner, and aware that Dr. Springer's due date was March 3 and the trial was set to commence on March 11, the prosecutor moved that the testimony of Dr. Springer be preserved by deposition.  When the trial commenced, the Commonwealth informed the judge that Dr. Springer had gone into labor four days earlier.  Although she was unaware of whether the baby had been born, or the condition of the mother and baby, the prosecutor asserted that Dr. Springer was unavailable to testify.

was unavailable, and overruled the defendant's objection to the use of the videotaped deposition.

Certainly, in some circumstances, a woman who gives birth to a child may not be able to testify as a witness at a criminal trial four days later without assuming an unacceptable risk to her health or to the health of her child.  However, that may not be true for all women.  In this case, there was no inquiry into Dr. Springer's particular circumstances.  At the time her deposition testimony was admitted, neither the judge nor the parties knew whether or when she gave birth.  Furthermore, even if Dr. Springer's condition on the day she was scheduled to testify did present an unacceptable risk to her of adverse health consequences, no consideration was given to whether the witness could appear later in the trial,[14] or whether a short continuance would alleviate this risk without compromising the interests of justice.  See United States v. Jacobs, 97 F.3d 275, 280-282 (8th Cir. 1996) (defendant's right to confrontation violated where witness was pregnant and near her due date; her physician reported that she required hospitalization for two days; and court excused her from appearing in person and

---

[14] The Commonwealth presented the deposition testimony of Dr. Springer on March 15, 2013.  However, it did not call its final witness and rest until March 18, 2013, one full week after Dr. Springer was reported to have been in labor.  The record is likewise devoid of any attempt by the Commonwealth to inquire as to Dr. Springer's physical ability to appear on that later date.

permitted her to be cross-examined by telephone, without further inquiry and without making express finding that she was unavailable). Under the circumstances here, the judge's determination that Dr. Springer was not available to testify at trial did not satisfy the test established in Housewright, and did not justify the admission of her deposition testimony.[15]

3. Harmless error. As in Housewright, 470 Mass. at 675, our conclusion that it was error to admit Dr. Springer's deposition testimony as an alternative to her live testimony requires us to consider whether the error was harmless beyond a reasonable doubt. See, e.g., Commonwealth v. Bacigalupo, 455 Mass. 485, 495 (2009). When, as in this case, the error consists of a violation of a constitutional right, the Commonwealth bears the burden of demonstrating "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Commonwealth v. Marini, 375 Mass. 510, 520 (1978), quoting from Chapman v. California, 386 U.S. 18 (1967). See Commonwealth v. Morales, 76 Mass. App. Ct. 663, 666-667 (2010). Whether the Commonwealth in this case has met

---

[15] In order to admit the deposition testimony of a Commonwealth witness taken in accordance with Mass.R.Crim.P. 35 for substantive purposes, the judge must be satisfied that it meets the requirements for admission under the law of evidence and that the witness is unavailable for purposes of the confrontation clause. See Commonwealth v. Ross, 426 Mass. 555, 557-558 (1998), discussing Mass.R.Crim.P. 35(g).

its burden of proof is determined on the basis of the other evidence that was presented to the jury absent the deposition testimony. See <u>Coy</u> v. <u>Iowa</u>, 487 U.S. at 1022. See also <u>Commonwealth</u> v. <u>DiBenedetto</u>, 414 Mass. 37, 41 (1992) (error is harmless if erroneously admitted deposition "was not a substantial factor in the jury's decision to convict").

In <u>Housewright</u>, the court noted that the witness in question (whom the defendant called Grandma) "was the only witness who recognized the defendant at the scene of the crime, and later identified him at an out-of-court identification procedure." 470 Mass. at 675.[16] Her testimony was thus significant, if not indispensable, to the Commonwealth's case. In the present case, by contrast, the deposition testimony of the medical examiner was cumulative of other evidence in the case. See <u>Commonwealth</u> v. <u>Vinnie</u>, 428 Mass. 161, 172 (1998).[17]

---

[16] The court in <u>Housewright</u> took into consideration that the witness's prior recorded testimony at the pretrial detention hearing qualified for admission as an exception to the hearsay rule because defense counsel had "reasonable opportunity and similar motivation" to cross-examine the witness regarding her testimony on direct examination. 470 Mass. at 676, quoting from <u>Commonwealth</u> v. <u>Hurley</u>, 455 Mass. 53, 60 (2009). See Mass. G. Evid. § 804(b)(1) (2015). Thus, if the witness were unavailable to testify at the retrial of the case, the court noted that, subject to certain redactions, her out-of-court testimony would qualify for admission in evidence. <u>Housewright</u>, 470 Mass. at 678.

[17] In her deposition, Dr. Springer testified about the nature of the gunshot wounds suffered by the victim, gave her opinion that the gunshots to his chest were the cause of death,

The central factual dispute in this case was the identity

of the shooter.[18]  Nothing in the testimony by the medical

examiner made it more likely that the shooter was the defendant,

as opposed to his cousin Rodley.  In their closing statements,

the prosecutor and the defense attorney made only passing

reference to the testimony of the medical examiner.  Defense

counsel actually relied on her testimony about the intermediate

_____

and opined that the victim's wounds were not "close" wounds, but were "intermediate range," which she defined as wounds caused by gunshots fired from a distance of "a couple of inches to a few feet away."  There was no dispute in this case that the victim died as a result of gunshot wounds.  Dr. John Steinmetz, an emergency room physician at Brockton Hospital, testified that the victim was dead on arrival at the emergency room.  The medical records of the victim's treatment at the Brockton Hospital emergency room, including a description of the gunshot wounds, also were admitted as an exhibit.  The certificate of death was in evidence describing the cause of death as "gunshot wounds of chest with perforation of lungs and aorta."  Numerous civilian witnesses described the victim's appearance following the shooting.  Trooper Keith Sweeney, the lead investigator, described the crime scene; the collection of physical evidence, including a projectile; the interviews of witnesses; and the efforts made by law enforcement to locate the defendant and his cousin Rodley after the shooting.

The testimony of Trooper John Conroy, the ballistician, that two projectiles recovered from the medical examiner's office had been fired by the same gun was not significant because the defendant's position was that the victim's gunshot wounds were caused by a single firearm fired by his cousin Rodley.

[18] Because the defendant was charged with murder in the first degree and the judge charged the jury on the theory of extreme atrocity and cruelty, testimony by the medical examiner about the number and nature of the wounds suffered by the victim could have been of great significance.  However, the defendant was found not guilty of so much of the indictment as charged murder in the first degree.

range of the victim's gunshot wounds to buttress his argument that the shooter was the defendant's cousin Rodley. The closing arguments were primarily about the credibility of the testimony given by the various eyewitnesses and, in particular, the defendant. The defendant has not identified any testimony by the medical examiner that was essential to the Commonwealth's case or significant to the jury's resolution of the defendant's guilt. Defense counsel thoroughly cross-examined Dr. Springer at her deposition, and there is no indication that either her testimony or the defense strategy on cross-examination would have differed at trial. Thus, we hold that the admission of Dr. Springer's videotaped deposition was harmless error beyond a reasonable doubt. See, e.g., McGaha v. State, 926 N.E.2d 1050, 1057 (Ind. Ct. App. 2010); State v. Hassapelis, 620 A.2d 288, 293-294 (Me. 1993); State v. Ash, 169 N.C. App. 715, 727 (2005).

4. Remaining issues. a. Prosecutor's closing argument. The defendant timely objected to the prosecutor's statement that "[the defendant] says [he] can still see Rodley Doriscat come up, poke [the victim] with the gun. [He] can see [the victim] reach for it and then [he] see[s] Rodley shoot him." The defendant is correct that this was a misstatement of the evidence by the prosecutor because the defendant did not testify that he saw Rodley fire the shots. We apply the prejudicial error standard. See Commonwealth v. Wood, 469 Mass. 266, 285-

286 (2014).  The judge instructed the jury that the arguments were not evidence, and that the jurors were to rely on their own memories of the evidence.  The principal factor is whether the error was significant, based on the evidence as a whole.  Commonwealth v. Kozec, 399 Mass. 514, 523 (1987).  The defendant testified that he heard shots, and then saw Rodley running from the scene holding a gun.  The defendant also testified that Rodley told him that he poked the victim with a gun.  Under the circumstances, the prosecutor's misstatement was not prejudicial.[19]

b.  Testimony regarding investigative efforts.  Finally, the defendant argues that the judge erred in permitting the prosecutor to elicit testimony from Trooper Keith Sweeney, the lead investigator in the case, that following the shooting and over the course of the days and weeks that followed, he and a team of police investigators interviewed numerous witnesses.  During a sidebar discussion, defense counsel told the judge that he could not rule out a request for an instruction that the jury could consider the inadequacy of the police investigation.  The

---

[19] The defendant also objected to the prosecutor's recounting of the police stop in Florida that led to the defendant's arrest.  Although the prosecutor's statements slightly differ from the defendant's account, the difference -- whether the officer first asked for the name of the car's driver and then the defendant's, or in reverse order -- is not significant when the evidence is considered as a whole.  See Commonwealth v. Richenburg, 401 Mass. 663, 674-675 (1988).

defendant does not maintain that the disputed testimony contained any inadmissible hearsay. The defendant does not cite any authority for the proposition that the Commonwealth cannot anticipate that the defendant may attack the adequacy of the police investigation as permitted by Commonwealth v. Bowden, 379 Mass. 472, 486 (1980), by offering testimony, as in this case, about the general extent of the police investigation. The defendant's reliance on Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008), is misplaced because that case turned on the need to avoid unfair vouching for the victim in a sexual assault case in view of the special and limited purpose for which hearsay evidence is admitted under the first complaint doctrine. "[T]he prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story." Old Chief v. United States, 519 U.S. 172, 190 (1997). The extent to which the prosecutor is permitted to inform the jury of the nature and extent of the police investigation as part of its case-in-chief is best left to the sound discretion of the judge.[20]

Judgment affirmed.

---

[20] "[I]nquiries into relevancy should relate to the way people learn and should permit jurors to 'draw inferences, whatever they may be, necessary to reach a correct verdict.'" Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 138 F. Supp. 2d 357, 368 (E.D.N.Y. 2001), quoting from Old Chief, 519 U.S. at 187.